## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

      Plaintiff,

v.

SEWER AUTHORITY OF THE CITY OF
SCRANTON,

      Defendant.

Civ. No. _____

## COMPLAINT

The United States of America, by authority of the Attorney General of the United States

and through the undersigned attorneys on behalf of the Administrator of the United States

Environmental Protection Agency ("EPA"), files this Complaint, and allege as follows:

### NATURE OF ACTION

1.      This is a civil action for injunctive relief and civil penalties brought against the

Sewer Authority of the City of Scranton pursuant to Sections 309(b) and (d) of the Federal Clean

Water Act ("CWA"), 33 U.S.C. §§ 1319(b) and (d), for permanent injunctive relief and

assessment of civil penalties regarding the operation of a sewage treatment plant and collection

system. The United States alleges that Defendant discharged, and continues to discharge,

pollutants into waters of the United States in violation of Section 301(a) of the CWA, 33 U.S.C.

§ 1311(a), including discharges of raw sewage, storm water, and other wastewater (collectively,

"combined sewage") from at least 80 constructed combined sewer outfalls, and for violations of

conditions established in the National Pollutant Discharge Elimination System ("NPDES")

permits issued to Defendant by the Pennsylvania Department of Environmental Protection

("PaDEP"), as authorized by the EPA under Section 402(b) of the CWA, 33 U.S.C. § 1342(b).

2.      Section 309(e) of the Clean Water Act states that when a municipality is a party to

a civil action brought by the United States under Section 309 of the Clean Water Act, "the State

in which the municipality is located shall be joined as a party." 33 U.S.C. § 1319(e). The

Commonwealth of Pennsylvania, through the PaDEP, has filed or will file a complaint alleging

violations the Pennsylvania Clean Streams Law, Act of June 22, 1937, P.S. 1987 *as amended,* 35

P.S. §§ 691-1001, arising out of the same operative facts as are alleged in this complaint. The

Commonwealth also has filed or will file, pursuant to Rule 24 of the Federal Rules of Civil

Procedure, a motion to intervene in this case as a co-plaintiff.

### JURISDICTION, VENUE, AUTHORITY AND NOTICE

3.      This Court has jurisdiction over the subject matter of this action pursuant to

Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1331, 1345 and 1355.

4.      Venue is proper in the Middle District of Pennsylvania pursuant to 28 U.S.C.

§§ 1391(b) and 1395(a) and Section 309(b) of the CWA, 33 U.S.C. § 1319(b), because it is the

judicial district where Defendant is located, where a substantial part of the events or omissions

giving rise to the claim occurred, and where the alleged violations occurred. Venue in this

district is also proper under 28 U.S.C. § 1391(c).

5.      Authority to bring this action is vested in the Attorney General of the United

States under Section 506 of the CWA, 33 U.S.C. § 1366, and 28 U.S.C. §§ 516 and 519.

### DEFENDANT

6.      Defendant is a municipal authority created under the Pennsylvania Municipal

Authorities Act, 53 Pa. C.S.A. §§ 5601-23, and is known as "the Sewer Authority of the City of

Scranton" or the "Scranton Sewer Authority" ("SSA").

7.      Defendant is located in Lackawanna County, Pennsylvania.

8.      Defendant has the power to sue and be sued. 53 Pa. C.S.A. § 5607(d)(2).

9.      Defendant is a "person" within the meaning of Section 502(5) of the CWA, 33 U.S.C. § 1362(5), and a "municipality" within the meaning of Section 502(4) of the CWA, 33 U.S.C. § 1362(4).

10.     Defendant owns and operates a "treatment works" as that term is defined in Section 212(2) of the CWA, 33 U.S.C. § 1292, and a "publicly owned treatment works" ("POTW") as that term is defined in EPA regulations implementing the CWA, 40 C.F.R. § 122.2 (cross-referencing the definition at 40 C.F.R. § 403.3(q)).

## LEGAL BACKGROUND

11.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant by any person except as authorized by a National Pollutant Discharge Elimination System ("NPDES") permit issued by the EPA or an authorized State pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

12.     Section 502(12) of the CWA, 33 U.S.C. § 1362(12), defines "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point source."

13.     Section 502(7), 33 U.S.C. § 1362(7), defines "navigable waters" to be the "waters of the United States, including the territorial seas."

14.     Federal regulations promulgated pursuant to the CWA define the phrase "waters of the United States" to include, among other things, (i) all waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce, including all waters which are subject to the ebb and flow of the tide; (ii) all interstate waters; (iii) tributaries of waters of these waters; and (iv) wetlands adjacent to the foregoing. 40 C.F.R. § 122.2.

15.     Section 502(6) of the CWA, 33 U.S.C. § 1362(6) includes "sewage" in the definition of "pollutant."

16.     Section 502(14) of the CWA, 33 U.S.C. § 1362(14), defines "point source" as "any discernable, confined and discrete conveyance . . . from which pollutants are or may be discharged."

17.     Under Section 402(a) of the CWA, 33 U.S.C. § 1342(a), the Administrator of the EPA may issue NPDES permits to authorize the discharge of pollutants into waters of the United States, subject to the conditions and limitations set forth in such permits.

18.     Section 402(b) of the CWA, 33 U.S.C. § 1342(b), provides that a state may establish its own permit program, and after receiving the EPA's authorization of its program, may issue NPDES permits.

19.     At all times relevant to this Complaint, the Commonwealth of Pennsylvania has been authorized by the EPA to administer an NPDES program for regulating the discharges of pollutants into navigable waters within the Commonwealth's jurisdiction. The EPA authorized the PaDEP to administer an NPDES program on July 1, 1978.

20.     The EPA retains concurrent enforcement authority pursuant to Section 402(i) of the Act, 33 U.S.C. § 1342(i).

21.     Section 402(q) of the Act, 33 U.S.C. § 1342(q), provides that each permit, order, or decree issued after December 21, 2000, for discharges from a municipal combined sewer system shall conform to the EPA's Combined Sewer Overflow Policy ("CSO Policy"), 59 Fed. Reg. 18688 (May 19, 1994).

22.     Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes the Administrator of the EPA to commence a civil action to obtain appropriate relief, including a permanent or

temporary injunction, when any person: discharges without a permit in violation of Section 301 of the CWA, 33 U.S.C. § 1311; violates any permit condition or limitation in a permit issued under Section 402 of the CWA, 33 U.S.C. § 1342; or violates any order issued by the Administrator of the EPA.

23.     Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), the court may impose civil penalties not to exceed $25,000 per day for each day in which such violation occurs on or before January 30, 1997, $27,500 per day for each day of violation after January 30, 1997 (Pub. L. 104-134, 61 Fed. Reg. 69360 (Dec. 31, 1996), $32,500 per day for each day in which such violation occurred after March 15, 2004, (69 Fed. Reg. 7121 (Feb. 13, 2004), and $37,500 for each day in which such violation occurred on or after January 12, 2009 (*see* 73 Fed. Reg. 75340, 75345 (Dec. 11, 2008).

## GENERAL ALLEGATIONS

24.     Defendant provides sewage collection and wastewater treatment services to residences and places of business covering a 16-square-mile area that includes parts of the City of Scranton and portions of the Boroughs of Dunmore, Taylor, Dickson City and Moosic.

25.     At all relevant times, Defendant has owned and/or operated a wastewater treatment facility ("WWTP") and an associated collection system (collectively referred to hereafter as "publicly owned treatment works" or "POTW"), including sanitary sewage conveyances and combined sewage and storm water conveyances which receive and treat wastewater and storm water runoff from residential, commercial, industrial and combined sewage sources.

26.     Defendant's collection system includes approximately 275 miles of sewers, approximately 172 miles of which consists of combined sewers that carry both sewage and storm water.

27.     During certain rainfall events, the volume of waste water entering Defendant's combined sewer system exceeds the hydraulic capacity of the sewers and/or the treatment plant. In those circumstances, Defendant's collection system will discharge untreated waste water from certain designated outfalls, known as combined sewer outfalls.

28.     When wastewater discharges from a combined sewer outfall, the event is known as a combined sewer overflow ("CSO").

29.     Pursuant to Section 402 of the Act, 33 U.S.C. § 1342, the PaDEP issued NPDES permit no. PA-0026492 for Defendant's WWTP with an effective date of November 5, 1996 (the "1996 NPDES Permit").

30.     The 1996 NPDES Permit identified, and authorized discharges from, one WWTP outfall and 69 combined sewer outfalls.

31.     Pursuant to Section 309(a) of the Clean Water Act, 33 U.S.C. § 1319(a), the EPA issued an Order for Compliance to Defendant which became effective on December 4, 2002 (the "2002 Order"). The 2002 Order is attached hereto as Appendix B.

32.     The PaDEP reissued NPDES permit no. PA-0026492 to Defendant with modified terms on July 1, 2003 (the "2003 NPDES Permit").

33.     The 2003 NPDES Permit identified, and authorized discharges from, one WWTP outfall and 78 combined sewer outfalls.

34.     The PaDEP reissued NPDES permit no. PA-0026492 to Defendant with modified terms on April 1, 2008 (the "2008 NPDES Permit").

35.     The 2008 NPDES Permit identified, and authorized discharges from, one WWTP outfall and 80 combined sewer outfalls.

36.     Defendant appealed certain terms of the 2008 NPDES Permit.

37.     The PaDEP reissued NPDES permit no. PA-0026492 to Defendant with modified terms on September 21, 2009 (the "2009 NPDES Permit"), to become effective on October 1, 2009.

38.     At all relevant times, Defendant's NPDES Permit has authorized Defendant to discharge pollutants only from specified point sources (identified in the permit as one or more numbered "outfalls") to specified waters of the United States and/or the Commonwealth, subject to limitations and conditions set forth in the NPDES permits.

39.     Defendant's collection system includes an interceptor pipe that, if well maintained, is capable of conveying sewage to the WWTP at a rate of 99 million gallons per day.

40.     Defendant's wastewater treatment plant was designed to treat only 20 million gallons of wastewater per day.

41.     If the interceptor conveys wastewater to the WWTP at a rate that exceeds the capacity of the WWTP, Defendant's NPDES permit authorizes it to discharge untreated wastewater from Outfall 003, but only if wastewater flows into the WWTP at a rate of more than 39 million gallons per day for one hour and continues to flow into the WWTP at a rate of more than 25 million gallons per day.

42.     In 2008, Defendant discharged in excess of 1 billion gallons of untreated wastewater from Outfall 003 and more than 100 million gallons of untreated wastewater from its other combined sewer outfalls.

43.     Defendant's WWTP outfall, known as Outfall 001, discharges treated wastewater into the Lackawanna River.

44.     The Lackawanna River is a perennial tributary of the Susquehanna River, which is in turn a perennial tributary of the Chesapeake Bay.

45.     Defendant's combined sewer outfalls discharge untreated combined sewage into the Lackawanna River, Roaring Brook, Meadow Brook, Keyser Creek, Stafford Meadow Brook, Little Roaring Brook, and Leggetts Creek.

46.     Roaring Brook, Meadow Brook, Keyser Creek, Stafford Meadow Brook, Little Roaring Brook, and Leggetts Creek are all perennial tributaries of the Lackawanna River.

47.     For portions of the Lackawanna River and its tributaries affected by discharges from Defendant's POTW and identified as waters of the Commonwealth, Pennsylvania has adopted water quality standards and designated beneficial water uses of recreation, drinking water as well as the aquatic life uses "Cold Water Fishery" and/or "Trout Stocking Fishery." 25 PA Code § 93.9.

48.     The Lackawanna River, Roaring Brook, Meadow Brook, Keyser Creek, Stafford Meadow Brook, Little Roaring Brook, Leggett Creek, the Susquehanna River, and the Chesapeake Bay are "waters of the United States" within the meaning of the Clean Water Act.

49.     The combined sewage that Defendant sometimes discharges from its combined sewer outfalls contains raw sewage, commercial and industrial waste from industrial users of the system, and storm water runoff.

50.     Raw sewage and combined sewage contain viruses, bacteria and protozoa as well as other pathogens.

51.     Infection with organisms contained in raw sewage can cause a number of adverse

health effects ranging from minor illnesses such as sore throats and mild gastroenteritis (causing stomach cramps and diarrhea) to life-threatening ailments such as cholera, dysentery, infectious hepatitis, and severe gastroenteritis.

52.     Children, the elderly, people with weakened immune systems, and pregnant women are at more risk for adverse consequences from such infections than the general population.

53.     When raw sewage and combined sewage are discharged into waterways, bacteria consume organic matter in the sewage and consume oxygen dissolved in the water. When large amounts of sewage are discharged, dissolved oxygen levels can become severely depleted, resulting in the suffocation of oxygen-dependent aquatic life forms including fish, mollusks, and crustaceans.

54.     Raw sewage and combined sewage contains high levels of nutrients such as nitrogen and phosphorous. When such nutrients enter water ways in large amounts, they can fuel algal blooms that block the penetration of light through the water and thereby threaten aquatic plants that rely on photosynthesis for energy. When algae decays, it can consume dissolved oxygen in the same manner as the decomposition of sewage.

**FIRST CLAIM FOR RELIEF**
**(Failure to Submit an Adequate Long Term Control Plan)**

55.     Paragraphs 1-54 are re-alleged and incorporated herein by reference.

56.     The EPA's CSO Policy requires the submission of a "Long Term Control Plan" to describe how the POTW will minimize or prevent CSOs. CSO Policy, 59 Fed. Reg. 18691-94 (April 19, 1994).

57.     Defendant's 1996 NPDES Permit required in part C.1.SIX that Defendant submit an adequate Long Term Control Plan and a schedule for implementing the plan by November 5, 1999.

58.     Defendant submitted a Long Term Control Plan in 1998 but did not submit a schedule for implementing the plan.

59.     The EPA has determined that the Long Term Control Plan submitted in 1998 did not satisfy the requirements of the EPA's CSO Policy.

60.     The 2002 Order directed Respondents to submit a revised Long Term Control Plan and a schedule for implementation consistent with EPA guidance by December 4, 2005.

61.     The 2003 NPDES Permit directed SSA to develop and implement a Long Term Control Plan by the deadlines identified in the 2002 Order.

62.     From at least December 4, 2005 and continuing to the present, Defendant has failed to submit a Long Term Control Plan and schedule for implementation consistent with the EPA's CSO Policy as required by the 2002 Order and the 2003 NPDES Permit.

63.     Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), provide that any person who violates any condition or limitation which implements § 301 of the Clean Water Act, including permit conditions and limitations, shall be subject to injunctive relief and a civil penalty. The statutory maximum civil penalty amounts that may be awarded per day for each violation are set forth in Paragraph 23.

64.     Unless enjoined by an order of the Court, Defendant will continue to violate Section 301(a) of the CWA, 33 U.S.C. § 1311(a), by failing to submit a Long Term Control Plan consistent with the requirements of Section 402(q) of the CWA and the EPA's CSO Policy.

## SECOND CLAIM FOR RELIEF
### (Failure To Implement Nine Minimum Controls)

65.     Paragraph 1-64 are re-alleged and incorporated herein by reference.

66.     The EPA's CSO Policy requires implementation of Nine Minimum Controls (NMC) for CSOs by January 1, 1997.

67.     The Nine Minimum Controls are best management practices that serve as technology-based effluent limits in permits that authorize discharges from CSOs.

68.     The EPA described the NMCs in detail in the guidance document, "Guidance for Nine Minimum Control Measures" (EPA No. 832-R-94-002) (the "NMC Guidance")

69.     The NMCs including the following:

        a.     (#1) Proper operation and regular maintenance programs for the sewer system and combined sewer outfalls;

        b.     (#2) Maximum use of the collection system for storage;

        c.     (#3) Review and modification of the pretreatment requirements to ensure that CSO impacts are minimized;

        d.     (#4) Maximization of flow to the WWTP for treatment;

        e.     (#5) Elimination of CSOs during dry weather;

        f.     (#6) Control of solids and floatable materials in CSOs;

        g.     (#7) Pollution prevention programs to reduce contaminants in CSOs;

        h.     (#8) Public notification to ensure that the public receives adequate notification of CSO occurrences and CSO impacts; and

        i.     (#9) Monitoring to effectively characterize CSO impacts and the efficacy of CSO controls.

70.     Defendant's 1996 NPDES Permit required in Part C.1.SIX.II that Defendant

demonstrate implementation of, and compliance with, the nine minimum controls as described in the NMC Guidance.

71.     Pursuant to the requirements of the 1996 NPDES Permit, Defendant submitted a plan for implementing the nine minimum controls on November 10, 1998 (the "1998 NCM Plan").

72.     The EPA determined in the 2002 Order that Defendant failed to implement several portions of the 1998 NMC Plan.

73.     In February 2003, Defendant submitted another plan for implementing the NMCs (the "2003 NMC Plan").

74.     The 2003 NPDES Permit required Defendants to implement the 2003 NMC Plan and demonstrate compliance with the NMCs.

75.     Part C.I.Nine.II of Defendant's 2008 NPDES permit requires Defendant to "demonstrate system wide compliance with the NMCs."

76.     Defendant has failed and continues to fail to properly operate and regularly maintain its POTW (NMC #1) in at least the following respects:

     a.     Defendant has failed and continues to fail to perform operation and maintenance work that is common in the industry and that, if performed, would improve its ability to use its collection system for storage and maximize flow to and through the WWTP;

     b.     Defendant lacks an operations and maintenance (O&M) manual for the collection system;

     c.     Defendant lacks written standard operating procedures (SOPs) for conducting maintenance and inspection activities in the collection system;

     d.     Defendant has an SOP for operating only one of its 80 CSO outfalls;

e.      Defendant lacks a list of facilities critical to the performance of the collection system and wastewater treatment plant;

f.      Defendant does not have a system for scheduling preventive maintenance tasks such as pipe or line cleaning;

g.      Upon information and belief, Defendant has a backlog of approximately 100 identified corrective maintenance activities, some of which have been on the backlog list for more than two years; and

j.      Defendant lacks formal training manuals or records of training for its employees.

77.      Defendant has failed and continues to fail to maximize its use of the collection system for storage (NMC #2) in at least the following respects:

a.      Defendant has failed and continues to fail to use its collection system to store wastewater during periods of high inflow rates;

b.      Defendant has failed and continues to fail to gather adequate information to use its collection system for storage, such as a map of the location of sanitary sewer lines and combined sewer lines and data regarding the rates of flow within the collection system during rain events;

c.      Defendant has failed and continues to fail to adjust the positions of its weirs to maximize storage and in response to changes in wastewater flows in the service area;

d.      Defendant has failed and continues to fail to minimize infiltration of water and grit into the collection from structural defects in the pipes;

e.      Defendant has failed and continues to fail to prevent river water from flowing into the collection system at combined sewer outfalls 015 and 035;

f.      Defendant has failed and continues to fail to clean accumulated grit and sediment from the collection system on a regular basis, reducing the capacity of the collection system; and

g.      Defendant has failed and continues to fail to conduct an evaluation of inflow and infiltration in the separate sanitary sewer system component of the collection system.

78.     Defendant has failed and continues to fail to conduct an adequate or complete program of reviewing and modifying pretreatment requirements (NMC #3) in at least the following respects:

a.      Defendant has failed and continues to fail to update its map of the location of significant industrial users of the collection system since 2003;

b.      Defendant has failed and continues to fail to conduct a formal, written evaluation of the impact of non-domestic discharges on CSOs; and

c.      Because Defendant does not have data regarding rates of flow within the collection system, it has failed and continues to fail to adequately assess the potential and actual impacts from significant industrial users of the collection system.

79.     Defendant has failed and continues to fail to maximize the flow of wastewater to the WWTP (NMC #4) in at least the following respects:

a.      Defendant has failed and continues to fail to adjust weir heights to maximize flow to the WWTP;

b.      Because Defendant does not have data regarding rates of flow within the collection system, it cannot adjust weir heights to maximize flow to the WWTP without risking sewage backups into home or businesses or localized flooding;

c.      Defendant has failed and continues to fail to take adequate steps to control

grit, which limits the ability of WWTP to treat wastewater;

      d.     Defendant has failed and continues to fail to consistently use its primary clarifiers to store flows to the WWTP;

      e.     Because Defendant does not have a list of critical equipment and does not perform adequate operation and maintenance, Defendant has failed and continues to fail to maximize flow to the WWTP; and

      f.     Defendant has failed and continues to fail to schedule maintenance activities in a way that maximizes flow to and through the WWTP.

    80.     Defendant has failed and continues to fail to comply with the minimum control of eliminating discharges from CSO outfalls during dry weather (NMC #5) in at least the following respects:

      a.     Defendant has discharged wastewater from CSO outfalls during dry weather, not as a result of precipitation;

      b.     Defendant does not have formal training manuals or records of training for its employees on procedures for inspecting CSO outfalls to determine whether a dry weather overflow has occurred;

      c.     Signs posted by Defendant at CSO outfalls are not placed in such a way as to provide sufficient information for a citizen to identify and report the occurrence of a dry weather overflow;

      d.     Defendant does not know the precise location of one CSO outfall, and therefore cannot determine whether dry weather overflows have occurred there; and

      e.     Defendant does not know whether two discharge pipes located in the Lackawanna River adjacent to the collection system are CSO outfalls.

81.     Defendant has failed and continues to fail to adequately control solids and floatables materials in the CSOs (NMC #6) in at least the following respects:

a.      Defendant has installed baffles to prevent solids and floatables from being discharged in only 3 of its 80 combined sewer outfall locations;

b.      Defendant has not installed effective means of preventing solids and floatables from being discharged during combined sewer overflows, and, as a result, Defendant's employees manually pick up solids and other debris from areas surrounding combined sewer outfalls after rain events;

c.      Defendant purchased a street sweeper that could help reduce the discharges of solids and floatable during CSOs, but Defendant does not have a schedule or program for street sweeping activities and has not yet begun using the sweeper; and

d.      Defendant does not know how many catch basins are included in its collection system, nor how many are connected to combined sewer outfalls, and therefore has failed and continues to fail to implement an effective program of cleaning them.

82.     Defendant has failed and continues to fail to comply with the minimum control of pollution prevention (NMC #7) in at least the following respects:

a.      Defendant has purchased a street sweeper, but does not yet use it;

b.      Defendant has not obtained permission from the City of Scranton to sweep its streets; and

c.      Defendant has failed and continues to fail to minimize grit entering the collection system from structural defects in pipes.

83.     Defendant has failed and continues to fail to comply with the minimum control of public notification (NMC #8) in at least the following respects:

      a.      Signs posted by Defendant to mark the location of combined sewer outfalls are not visible from the water in some locations or have become overgrown by vegetation;

      b.      Because Defendant does not know the location of combined sewer outfall 054, it cannot post signs at that precise location; and

      c.      Defendant does not notify the public of the occurrence of overflow events that occur in areas that are not permitted combined sewer outfalls.

84.      Defendant has failed and continues to fail to comply with the minimum control of monitoring to effectively characterize CSO impacts and the efficacy of CSO controls (NMC #9) in at least the following respects:

      a.      Defendant does not have a map of the locations of sanitary sewer lines and combined sewer lines;

      b.      Defendant cannot monitor combined sewer outfall 054 because Defendant does not know its location;

      c.      Defendant does not know whether two pipes that discharge to the Lackawanna River were CSO Outfalls; and

      d.      Defendant does not have written procedures for CSO inspections and does not document CSOs in a standardized fashion.

85.      Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), provide that any person who violates any condition or limitation which implements § 301 of the Clean Water Act, including permit conditions and limitations, shall be subject to injunctive relief and a civil penalty. The statutory maximum civil penalty amounts that may be awarded per day for each violation are set forth in Paragraph 23.

86.     Unless enjoined by an order of the Court, Defendant will continue to violate Section 301 of the CWA, 33 U.S.C. § 1311, by failing to comply with the conditions of its NPDES permit regarding the nine minimum controls.

**THIRD CLAIM FOR RELIEF**
**(Unpermitted Discharges from CSO Outfalls to Waters of the United States)**

87.     Paragraphs 1-86 are re-alleged and incorporated herein by reference.

88.     The 2003 NPDES Permit, the 2008 NPDES Permit, and the 2009 NPDES Permit authorize Defendant to discharge combined sewage from its combined sewer outfalls only when necessitated by stormwater entering the sewer system and exceeding the hydraulic capacity of the sewers and /or the treatment plant.

89.     The 2003 NPDES Permit, the 2008 NPDES Permit, and the 2009 NPDES Permit authorize Defendant to discharge combined sewage from Outfall 003 only during wet weather and only when flows to the WWTP have exceed 39 million gallons per day for more than one hour in a 24-hour period, and continue to exceed 25 million gallons per day thereafter.

90.     The 2003 NPDES Permit, the 2008 NPDES Permit, and the 2009 NPDES Permit state that dry weather overflows are prohibited.

91.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant by any person except as authorized by a National Pollutant Discharge Elimination System ("NPDES") permit issued by the EPA or an authorized State pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

92.     Defendant has repeatedly discharged combined sewage from combined sewer outfalls during dry weather.

93.      Defendant has repeatedly discharged combined sewage from combined sewer outfalls during storm events where the hydraulic capacity of the sewers and /or the treatment

plant has not been exceeded due to precipitation.

94.     Defendant has repeatedly discharged combined sewage from Outfall 003 without meeting the flow requirements described in paragraph 89.

95.     Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), provide that any person who violates any condition or limitation which implements Section 301 of the Clean Water Act, including permit conditions and limitations, shall be subject to injunctive relief and a civil penalty. The statutory maximum civil penalty amounts that may be awarded per day for each violation are set forth in Paragraph 23.

96.     Unless enjoined by an order of the Court, Defendant will continue to discharge pollutants from its combined sewer outfalls in violation of its NPDES permit and Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

## FOURTH CLAIM FOR RELIEF
### (Discharges in Excess of Permit Limits)

97.     Paragraphs 1-96 are re-alleged and incorporated herein by reference

98.     Defendant's NPDES permits contain limits on the concentrations of certain pollutants likely to be present in the treated effluent from the WWTP, including total suspended solids, ammonia nitrogen, carbonaceous biochemical oxygen demand, fecal coliform, and total residual chlorine.

99.     Appendix A , incorporated herein by reference, provides a table of currently known occasions on which Defendant discharged pollutants from its WWTP at concentrations that violated its permit.

100.    Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant by any person except as authorized by a National Pollutant Discharge Elimination

System ("NPDES") permit issued by the EPA or an authorized State pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

101.    Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), provide that any person who violates any condition or limitation which implements Section 301 of the Clean Water Act, including permit conditions and limitations, shall be subject to injunctive relief and a civil penalty. The statutory maximum civil penalty amounts that may be awarded per day for each violation are set forth in Paragraph 23.

102.    Unless enjoined by an order of the Court, Defendant will continue to discharge pollutants in excess of its permit limits in violation of the NPDES permits and Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

**FIFTH CLAIM FOR RELIEF**
**(Violation of the Proper Operation and Maintenance Condition**
**in Permits)**

103.    Paragraphs 1-102 are re-alleged and incorporated herein by reference.

104.    The 2003 NPDES Permit, the 2008 NPDES Permit, and the 2009 NPDES Permit state that Defendant shall at all times properly operate and maintain all facilities and systems of treatment and control (and related appurtenances) which are installed or used by Defendant to achieve compliance with the terms and conditions of the permits (the "Proper Operation and Maintenance Conditions").

105.    Defendant has failed to comply with the Proper Operation and Maintenance Conditions in at least the respects identified in Paragraph 76.

106.    Many illegal discharges, including those alleged in Paragraphs 92 and 94, resulted, in whole or in part, from Defendant's failure to comply with the Proper Operation and Maintenance Conditions.

107.    Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), provide that

any person who violates any condition or limitation that implements Section 301 of the Clean Water Act, including permit conditions and limitations, shall be subject to injunctive relief and a civil penalty. The statutory maximum civil penalty amounts that may be awarded per day for each violation are set forth in Paragraph 23.

108.    Unless enjoined by an order of the Court, Defendant will continue to violate Section 301(a) of the CWA, 33 U.S.C. § 1311(a), by failing to comply with the Proper Operation and Maintenance Conditions of its NPDES Permit.

**SIXTH CLAIM FOR RELIEF**
**(Violation of Reporting Requirements in Permits)**

109.    Paragraphs 1-108 are re-alleged and incorporated herein by reference

110.    The 2003 NPDES Permit, the 2008 NPDES Permit, and the 2009 NPDES Permit each state that Defendant "shall give advance notice to [PaDEP] of any planned changes in the permitted facility or activity that may result in noncompliance with permit requirements."

111.    Since 2006, Defendant has, on several occasions, made physical changes to the WWTP that made it temporarily unable, or unlikely to be able, to comply with its permit limits, including but not limited to the following:

a.    For a period of time in 2009, Defendant took offline several sewage pumps at the headworks of the WWTP. During that time period, Defendant used three temporary pumps with a total combined pumping capacity of 18 million gallons per day. While these pumps were in service, and the regular pumps were not, Defendant was unable to comply with the permit condition described in Paragraph 89.

b.    For a period of time in 2009, Defendant took one of its two grit chambers offline. The grit chamber remaining in service during that time period had a flow capacity of

approximately 30 million gallons per day, making it impossible for Defendant to comply with the permit conditions described in Paragraph 89.

112.    Defendant failed to report the circumstances described in Paragraph 111, above, to the PaDEP.

113.    The 2003 NPDES Permit, the 2008 NPDES Permit, and the 2009 NPDES Permit state that Defendant "shall report [to the PaDEP] any noncompliance which may endanger health or the environment."

114.    At various times from 2002 until the present, Defendant has discharged untreated wastewater containing raw sewage from manholes, sewer pipes and other conveyances into buildings, public areas, homes, and streams.

115.    Upon information and belief, Defendant did not report all such discharges to the PaDEP.

116.    Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), provide that any person who violates any condition or limitation which implements Section 301 of the Clean Water Act, including reporting requirements in an NDPES permit, shall be subject to injunctive relief and a civil penalty. The statutory maximum civil penalty amounts that may be awarded per day for each violation are set forth in Paragraph 23.

117.    Unless enjoined by an order of the Court, Defendant will continue to violate Section 301(a) of the CWA, 33 U.S.C. § 1311(a), by failing to report anticipated and unanticipated non-compliance with its NPDES Permit.

**SEVENTH CLAIM FOR RELIEF**
**(Failure to Comply with EPA Administrative Order)**

118.    Paragraphs 1-117 are re-alleged and incorporated herein by reference.

119.    The 2002 Order found that Defendant had numerous violations of the CWA and

CSO policy including, but not limited to, failure to implement the Nine Minimum Controls and failure to submit a revised Long Term Control Plan and schedule for implementation consistent with the CSO Policy.

120.     The 2002 Order required Defendant to conduct the activities identified in paragraphs 81-123 of the 2002 Order, attached hereto as Appendix B.

121.     Upon information and belief, Defendant did not perform many of the tasks described in the order by the provided deadline, including but not limited to:

a.     Defendant failed to identify all discharge points to PaDEP within 45 days of the effective date of the 2002 Order, as required by paragraph 82 of the 2002 Order;

b.     Defendant did not timely submit a plan and schedule for eliminating discharge points from the combined sewer system as required by paragraph 95 of the 2002 Order;

c.     Defendant failed to submit to EPA various plans, reports, and other documentation related to its pretreatment program, as required by paragraphs 102-08 of the 2002 Order;

d.     Defendant failed to submit to EPA within 180 days of the effective date of the 2002 Order, a re-evaluation of local limits, as required by paragraph 109 of the 2002 Order;

e.     Defendant failed to certify to EPA, within 30 days of the effective date of the 2002 order, the status of repairs related to deficiencies identified during an inspection of outfalls 201 and 202 conducted on or about May 21, 2002, as required by paragraph 113 of the 2002 order;

f.     Defendant did not timely install, operate and collect data from monitoring devices at fifteen (15) CSO discharge points that are representative of the combined sewer relief

discharge points listed in the Permit as discharge points 003-071 as required by paragraph 114 of the 2002 Order;

g.      Defendant has failed, with respect to various items submitted pursuant to the 2002 Order, to correct deficiencies in such submissions in accordance with EPA's comments and resubmit such submissions with 45 days of receiving comments from EPA, as required by paragraph 117 of the 2002 Order; and

h.      Defendant has failed to meet schedules included in various items submitted pursuant to the 2002 Order, in violation of paragraph 118 of the 2002 order.

122.    Upon information and belief, Defendant has not yet completed many of the tasks described in the order by the provided deadline, including but not limited to:

a.      Defendant has failed and continues to fail to implement the specific operating protocols described in paragraph 86 and the monitoring protocol described in subparagraph 86.a of the 2002 Order;

b.      Defendant has failed and continues to fail to cease the discharge of pollutants into waters of the United States except in compliance with Permit No. PA-0026492 and Sections 301 and 402 of the Act as required by paragraph 81 of the 2002 Order;

c.      Defendant has failed and continues to fail to submit to EPA a hydraulic model of the combined sewer system as required by paragraph 98 of the 2002 Order;

d.      Defendant has failed and continues to fail to complete and submit to PaDEP and EPA a revised Long Term Control Plan and a schedule for implementation of the Long Term Control Plan in conformance with EPA's Combined Sewer Overflow (CSO) Control Policy, 59 Fed. Reg. 18688 (April 19, 1994) (codified at 33 U.S.C. § 1342(q)) and EPA's

24

Combined Sewer Overflows: Guidance for Long Term Control Plan (1995) as required by paragraph 99 of the 2002 Order; and

   e. Defendant has failed and continues to fail to fully implement various items submitted pursuant to the 2002 Order, as required by paragraph 118 of the 2002 Order.

  123. Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), provide that any person who violates an order issued by the EPA Administrator under Section 309(a), 33 U.S.C. § 1319(a), shall be subject to injunctive relief and a civil penalty. The statutory maximum civil penalty amounts that may be awarded per day for each violation are set forth in paragraph 23.

  124. Unless enjoined by an order of the Court, Defendant will continue to violate the 2002 Order.

**EIGHTH CLAIM FOR RELIEF**
**(Imminent and Substantial Endangerment to Human Health)**

  125. Paragraphs 1-124 are re-alleged and incorporated herein by reference.

  126. On at least 60 occasions between at least January 2009 and August 2009, and upon information and belief occurring regularly at all times relevant to this complaint, Defendant has discharged untreated wastewater containing raw sewage and other pollutants from various point sources in its collection system onto public and private property including, without limitation, streets, buildings, and homes located in the City of Scranton and surrounding areas, where persons have or may have come into contact with such sewage.

  127. Defendant's POTW is a "pollution source or combination of sources" as that phrase is used in Section 504(a) of the CWA, 33 U.S.C. § 1364(a).

128.     Defendant, as the owner and operator of the POTW, is a "person causing or contributing to the alleged pollution" within the meaning of Section 504 of the CWA, 33 U.S.C. § 1364.

129.     Upon information and belief, Defendant's discharges of raw sewage and wastewater containing raw sewage will continue unless enjoined by this Court.

130.     The risk of future discharges of raw sewage and wastewater containing raw sewage is presenting an "imminent and substantial endangerment to the health of persons" within the meaning of Section 504 of the CWA, 33 U.S.C. § 1364.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States of America, respectfully requests that this Court provide the following relief:

1.     A permanent injunction enjoining Defendant from any and all ongoing and future violations of the CWA by ordering compliance with the Act;

2.     A permanent injunction directing Defendant to take all steps necessary to come into permanent and consistent compliance with the prohibition on unpermitted discharges contained in Section 301(a) of the CWA;

3.     A permanent injunction directing Defendant to take all steps as are necessary to prevent or minimize the imminent and substantial risk to human health posed by pollutants (raw sewage) originating in its POTW, in accordance with Section 504(a) of the CWA, 33 U.S.C. § 1364(a);

4.     A permanent injunction directing Defendant to take all steps necessary to achieve permanent and consistent compliance with the CWA and the regulations promulgated thereunder, and all terms and conditions of its NPDES permits;

5.    A permanent injunction requiring Defendant to submit and implement a full, complete, and adequate Long Term Control Plan;

6.    A judgment assessing civil penalties against Defendant and in favor of the United States and the Commonwealth;

7.    Order Defendant to mitigate the effects of each of its violations;

8.    Award the United States and the Commonwealth their costs and disbursements in this action; and

9.    Grant such other and further relief as this Court deems appropriate.

Respectfully Submitted,

JOHN C. CRUDEN
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

Dated:  Sept. 29, 2009

DANIEL S. SMITH
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044
601 D Street NW
Washington, DC 20004
202-305-0371 (voice)
202-616-6583 (fax)
dan.smith2@usdoj.gov

Of Counsel:

DENNIS V. PFANNENSCHMIDT
U.S. Attorney
U.S. Attorney's Office,
 Middle District of Pennsylvania

STEPHEN R CERUTTI II
Assistant United States Attorney
PA Bar # 90744
Stephen.Cerutti@usdoj.gov
228 Walnut Street, Suite 220
P.O. Box 11754
Harrisburg, PA 17108-1754
Phone: (717) 221-4482
Fax: (717) 221-2246