Exhibit A

Redline markup comparing existing consent decree to
proposed amended consent decree (excluding appendixes)

The proposed amended consent decree has been filed as ECF No. 170-1

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

     Plaintiff,

PENNSYLVANIA DEPARTMENT OF
ENVIRONMENTAL PROTECTION

     Plaintiff-Intervenor,

     v.

SCRANTON SEWER AUTHORITY, *and*

~~Defendant~~PENNSYLVANIA
AMERICAN WATER CO.

     Defendants.

CIVIL ACTION NO. 3:CV-09-1873

(Judge Jones)

AMENDED CONSENT DECREE

# TABLE OF CONTENTS

I. JURISDICTION AND VENUE ....................................................................5

II. APPLICABILITY AND BINDING EFFECT ...............................................6

III. OBJECTIVES ...............................................................................................7

IV. DEFINITIONS .............................................................................................8

V. COMPLIANCE MEASURES .....................................................................14

    A. NINE MINIMUM CONTROLS ......................................................14

    B. LONG-TERM CONTROL PLAN ...................................................15

    C. GENERAL COMPLIANCE .............................................................17

VI. REVIEW AND APPROVAL OF SUBMITTALS .......................................21

VII. REPORTING ................................................................................................23

    A. REPORTS ..........................................................................................23

    B. CERTIFICATION AND ADMISSIBILITY .....................................24

VIII. FUNDING ....................................................................................................25

IX. CIVIL PENALTY ........................................................................................25

X. STIPULATED PENALTIES ........................................................................27

XI. FORCE MAJEURE ......................................................................................33

XII. DISPUTE RESOLUTION ...........................................................................35

XIII. EFFECT OF SETTLEMENT ......................................................................37

XIV. NOT A PERMIT ..........................................................................................39

XV. INFORMATION COLLECTION AND RETENTION ...............................40

XVI. NOTICES AND SUBMISSIONS ................................................................42

XVII. EFFECTIVE DATE .....................................................................................44

XVIII. RETENTION OF JURISDICTION ..............................................................44

XIX. MODIFICATION .........................................................................................45

i

XX.     TERMINATION ........................................................................................................45

XXI.    LODGING AND OPPORTUNITY FOR PUBLIC COMMENT ...................................46

XXII.   SIGNATORIES/SERVICE...............................................................................................47

XXIII.  COSTS OF SUIT .............................................................................................................47

XXIV.  INTEGRATION ...............................................................................................................47

XXV.   APPENDICES ..................................................................................................................48

XXVI.  FINAL JUDGMENT ........................................................................................................48

WHEREAS, on September 29, 2009, Plaintiff, the United States of America ("United States"), on behalf of the United States Environmental Protection Agency (the "EPA"), filed a Complaint in this matter against ~~Defendant~~the Scranton Sewer Authority~~, (the "Defendant" or the "~~ ("SSA") seeking injunctive relief and civil penalties, and alleging, *inter alia*, that the SSA violated the Clean Water Act (the "CWA"), 33 U.S.C. §§ 1251-1387, and certain terms and conditions of the National Pollutant Discharge Elimination System ~~("NPDES)~~") permit issued to the SSA pursuant to the CWA relating to the municipal wastewater treatment plant and collection system owned and operated by the SSA;

WHEREAS, Plaintiff-Intervenor, the Commonwealth of Pennsylvania Department of Environmental Protection ("PADEP") filed a Complaint in Intervention against the SSA seeking injunctive relief and civil penalties, and alleging, *inter alia*, that the SSA violated the Clean Water Act, 33 U.S.C. §§ 1251-1387, Sections 201, 202 and 401 of the Clean Streams Law, 35 Pa. Stat. Ann. §§ 691.201, 691.202 and 695.401, and certain terms and conditions of the NPDES Permit issued to the SSA pursuant to the CWA relating to the municipal wastewater treatment plant and collection system owned and operated by the SSA;

WHEREAS, the SSA is a municipal authority organized under the Municipal Authorities Act, as amended, 53 Pa. Cons. Stat. Ann. §§ 5601-5623, that owns, operates, and maintains a publicly owned treatment works ("POTW"), which includes a wastewater treatment plant known as the Scranton Sewer Authority Wastewater Treatment Plant ("WWTP") and a collection system ("Collection System") which collects stormwater and wastewater from residential, commercial and industrial sources for the purpose of transporting that wastewater to the WWTP. Certain portions of the Collection System are a Combined Sewer System and other portions are a Sanitary Sewer System. The WWTP and Collection System are authorized to discharge

pollutants in accordance with the SSA's NPDES permit into the Lackawanna River, Roaring Brook, Stafford Meadow Brook, Little Roaring Brook, Keyser Creek, Leggetts Creek, and Meadow Brook; all of which are located within the jurisdiction of the U.S. District Court for the Middle District of Pennsylvania;

WHEREAS, the United States and the PADEP ~~allege~~alleged in the Complaint that the SSA has violated and ~~continues~~was continuing to violate Sections 301 and 402 of the Clean Water Act, 33 U.S.C. §§ 1311 and 1342, Sections 3, 201, 202 and 401 of the Clean Streams Law, 35 Pa. Stat. Ann. §§ 691.3, 691.201, 691.202 and 691.401, by impermissibly discharging untreated sewage from the Collection System to the Lackawanna River and several smaller water tributaries to the Lackawanna;

WHEREAS, the United States ~~brings~~brought its claims pursuant to Section 309 of the CWA, 33 U.S.C. § 1319. In its complaint, the United States ~~seeks~~sought the imposition of civil penalties and injunctive relief against the SSA for alleged violations of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and terms and conditions of the NPDES permit last issued by the PADEP as NPDES Permit No. PA-0026492, effective on October 1, 2009 and amended on May 13, 2011;

WHEREAS, the SSA ~~has~~ demonstrated through disclosure of its financial records to Plaintiffs that it ~~has~~had, and ~~will~~would likely continue to have for the foreseeable future, limited ability to pay civil or stipulated penalties and simultaneously meet the compliance requirements of this Consent Decree;

WHEREAS, the United States, the PADEP and the SSA previously negotiated the terms of a Consent Decree, which was lodged with this Court on December 13, 2012, and was entered by this Court by order dated January 31, 2013 (the "Original Consent Decree");

WHEREAS, Section XIX of the Original Consent Decree provided for modification of the Original Consent Decree by written agreement signed by all of the Parties or their successor in interest, and provided where the modification constitutes a material change, it shall be effective only upon approval by the Court;

WHEREAS, pursuant to Section XIX of the Original Consent Decree, on December 18, 2015, the United States, the PADEP and the SSA filed with the Court (for notice purposes only) an Agreed Non-Material Modification of Consent Decree providing for certain modifications to the description and schedule for particular projects in the Long Term Control Plan ("LTCP") set forth in Appendix B of the Original Consent Decree;

WHEREAS, Paragraph 5 of the Original Consent Decree provided terms and conditions applicable in the event that the SSA wishes to transfer ownership of the WWTP or the Collection System and the purchaser wishes to assume the obligations of the Original Consent Decree;

WHEREAS, the SSA, as Seller, and Pennsylvania-American Water Company ("PAWC" or the "Defendant") as Buyer, have entered into an Asset Purchase Agreement dated as of March 29, 2016 (the "Asset Purchase Agreement"), under which, subject to satisfaction of certain conditions, PAWC will acquire and thereafter solely manage and operate the WWTP and Collection System (the "Transaction");

WHEREAS, the Closing of the Transaction (as defined below) is conditioned upon satisfaction of certain conditions precedent as set forth in the Asset Purchase Agreement, including but not limited to (1) approval of the Transaction by the Pennsylvania Public Utility Commission ("PAPUC"); (2) receipt of other required consent and regulatory approvals; and (3) the agreement by the United States and the PADEP to the lodging of an Amended Consent Decree; and (4) the approval by this Court of an Amended Consent Decree. This Amended

Consent Decree provides for, among other matters: (i) substitution of PAWC for the SSA as the party Defendant to the Consent Decree and release of the SSA in accordance with Article II, Section 5 of the Original Consent Decree upon the Closing of the Transaction; and (ii) adoption of an Amended Nine Minimum Controls Plan applicable to Defendant PAWC upon the Closing of the Transaction;

WHEREAS, the SSA and PAWC provided notice to the United States and the PADEP of the execution of the Asset Purchase Agreement and PAWC's agreement to assume the SSA's obligations under the Original Consent Decree, which shall become effective as of the Closing of the Transaction, as required under Sections II and XVI of the Original Consent Decree;

WHEREAS, PAWC is a Pennsylvania Corporation with its principal place of business in Pennsylvania, and subsidiary of American Water Works Company, and an investor-owned public utility company regulated by the PAPUC pursuant to the Pennsylvania Public Utility Code, 66 Pa. Cons. Stat. Ann. §101 et seq.;

WHEREAS, as of the date of lodging of this Amended Consent Decree, the SSA has paid all stipulated penalties demanded under Paragraph 45 of the Original Consent Decree;

WHEREAS, the operation, maintenance, and schedule for improvements for the WWTP and Collection System will continue to be governed by the provisions of this Amended Consent Decree, implementing EPA's Combined Sewer Overflow Policy, 59 Fed. Reg. 18688 (April 19, 1994) as identified in Section 402(q) of the Clean Water Act, 33 U.S.C. § 1342(q);

WHEREAS, the Parties are entering into this Amended Consent Decree to reflect the substitution of PAWC for the SSA as the Defendant in this matter, and to modify certain other terms of the Original Consent Decree in light of the contemplated acquisition of the WWTP and Collection System by PAWC and substitution of PAWC for the SSA as the Defendant;

WHEREAS, nothing in this Consent Decree will be construed as an admission by the SSA or PAWC of violations of any provisions of the CWA, or of the SSA's current or past NPDES permits, or of the Clean Streams Law; and

WHEREAS, the United States, the PADEP, and the SSA, and PAWC ("Parties") recognize, and this Court by entering this Consent Decree finds, that this Consent Decree has been negotiated in good faith and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest;

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section II (Jurisdiction and Venue) below, and with the consent of the Parties, it is hereby ORDERED, ADJUDGED and DECREED as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over the Parties United States, the PADEP, the SSA and PAWC and the subject matter of this action pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1331, 1345, 1355, and 1367. Venue is proper in this District pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1391(b) and 1395(a). For purposes of this Consent Decree, or any action to enforce this Consent Decree, Defendant consents to the Court's jurisdiction over this Decree and any such action and over Defendant and consents to venue in this judicial district.

2. For purposes of this Consent Decree, Defendant agrees that the Complaint and the Complaint in Intervention state claims upon which relief may be granted pursuant to Sections 301 and 402 of the Clean Water Act, 33 U.S.C. §§ 1311 and 1342, and Sections 3, 201, 202, 401, 601, and 605 of the Clean Streams Law, 35 Pa. Stat. Ann. §§ 691.3, 691.201, 691.202, 691.401, 691.601, and 691.605.

## II.     APPLICABILITY AND BINDING EFFECT

3.      This Amended Consent Decree will apply to and be binding upon the United States, on behalf of the EPA, the PADEP, and upon Defendant and its successors, assigns, and all other entities and persons provided for in Fed. R. Civ. P. 65(d). Within one business day of the Closing of the Transaction, PAWC shall notify the Court and the United States, the PADEP, and the SSA as to the occurrence of Closing of the Transaction by filing on the docket of the above-captioned matter a copy of the notice in Appendix D executed by both the SSA and PAWC.

4.      Defendant shall notify the following of the existence of this Consent Decree and make a copy available to them: all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Consent Decree, as well as to any contractor retained to perform work required under this Consent Decree.

5.      Effective from upon Closing of the Date of Lodging Transaction, PAWC shall be substituted for the SSA as the "Defendant" for all purposes of this Consent Decree until its termination., and the SSA shall be released from all obligations and liabilities under this Consent Decree, except as specified in Paragraph 36.  In the event that the SSA Defendant transfers any ownership or operation of its WWTP, the Collection System, or any portion of the WWTP or Collection System, and includes in such transfer, the transfer of any obligations under this Consent Decree, the SSA Defendant will give written notice and a copy of this Consent Decree to any successors in interest at least 30 Days prior to such transfer. The SSA Defendant will condition any transfer, in whole or in part, of ownership, operation, or other interest in its WWTP, the Collection System, or any other portion of the SSA WWTP and/or Collection System upon the successful execution of the terms and conditions of this Consent Decree. Simultaneously with notice to any successor in interest, the SSA Defendant will provide written

notice of such transfer to the United States and the PADEP as provided in Section ~~XVI~~XVI (Notices and Submissions). In the event of any such transfer of ownership or other interest, the ~~SSA~~Defendant will not be released from the obligations or liabilities of this Consent Decree unless: (i) the transferee has the financial and technical ability to assume these obligations and liabilities; (ii) the United States and the PADEP have agreed to release the SSA from the obligations and liabilities; (iii) the United States, the PADEP, and the transferee have jointly moved to substitute the transferee as Defendant to this Consent Decree; and (iv) the Court has approved the substitution.

6.    In any action to enforce this Consent Decree, Defendant will not raise as a defense the failure of its officers, directors, agents, contractors, employees, successors, assigns or any other persons or entities provided for in Fed. R. Civ. P. 65(d) to take any actions necessary to comply with the provisions hereof.  Nothing in this Paragraph prevents the Defendant from invoking Section ~~XI~~XI of this Decree (Force Majeure), provided that the event meets the definition of a Force Majeure provided in Paragraph ~~53~~53.

### III.    OBJECTIVES

7.    The objectives of this Consent Decree are for the Defendant to take the steps necessary to  achieve full compliance with the CWA~~, the regulations promulgated thereunder,~~ including, but not limited to, 33 U.S.C. § 1342(q) and the regulations promulgated thereunder, and the Clean Streams Law and the regulations promulgated thereunder. All plans, reports, construction, remedial maintenance, and other obligations in this Consent Decree or resulting from the activities required by this Consent Decree shall have the objective of causing Defendant to come into and remain in full compliance with the terms and conditions of Defendant's NPDES Permit, the Clean Water Act, and the Clean Streams Law, as these terms are defined in Section ~~IV~~IV (Definitions).

# IV.    DEFINITIONS

8.      Unless otherwise defined herein, terms used in this Consent Decree shall have the meaning given to those terms in the CWA, 33 U.S.C. § 1251-1387 the regulations promulgated thereunder, or, if not defined in the Clean Water Act or its regulations, then as defined in the Pennsylvania Clean Streams Law, 35 Pa. Stat. Ann. §§ 691.1-691.1001 and the regulations promulgated thereunder. The following definitions shall apply to the terms used in the Consent Decree:

a.      "Amended Consent Decree" shall mean this consent decree;

b.      "Amended Nine Minimum Controls Plan" or "Amended NMC Plan" shall mean the plan attached hereto as Appendix B, as the same may be revised and updated in accordance with Section V.A. (Nine Minimum Controls) of this Consent Decree and in accordance with the CSO Policy.

a.c.    "BNR Project" shall mean the wastewater treatment plant upgrades that the SSA is constructing pursuant to requirements in the NPDES Permit, which, as of the Effective Date, are described in Part C § SEVEN of the NPDES Permit.

b.d.    "Building/Private Property Backup" shall mean a wastewater release or backup into a building or private property that is caused by blockages, flow conditions, or other malfunctions of the Collection System. A wastewater backup or release that is caused by blockages, flow conditions, or other malfunctions of a Private Lateral is not a Building/Private Property Backup.

c.e.    "Clean Water Act" or "CWA" shall mean the Federal Water Pollution Control Act found at 33 U.S.C. §§ 1251-1387, and the regulations promulgated thereunder.

f.      "Closing of the Transaction" means the consummation of the sale and purchase of the WWTP and Collection System pursuant to the Asset Purchase Agreement, when

8

title to the WWTP and Collection is conveyed to PAWC. The Asset Purchase Agreement provides that Closing shall take place on or before March 31, 2017. If Closing does not occur prior to March 31, 2017, the SSA will continue to be the "Defendant," PAWC will have no obligations under this consent decree, and the Parties will file a joint motion pursuant to Rule 21 of the Federal Rules of Civil Procedure to drop PAWC as a party.

d.g.    "Collection System" shall mean the current and future municipal wastewater collection and transmission system previously owned or operated by the SSA and after the Closing of the Transaction owned and operated by Defendant, including all pipes, interceptors, force mains, gravity sewer lines, lift stations, pumping stations, manholes and appurtenances thereto designed to collect and convey municipal sewage and wastewaters (domestic, commercial, and industrial) to the SSA's WWTP or to a CSO Outfall. "Collection System" includes both the "Combined Sewer System" and the "Sanitary Sewer System."

e.h.    "Combined Sewer Overflow Control Policy" or "CSO Policy" shall mean the policy issued by the EPA regarding combined sewer overflows, entitled "Combined Sewer Overflow (CSO) Control Policy," 59 Fed. Reg. 18688 (April 19, 1994) and as identified in Section 402(q) of the Clean Water Act, 33 U.S.C. § 1342(q).

f.i.    "Combined Sewer Overflow" or "CSO" shall mean any discharge from the SSA's Combined Sewer System at a CSO Outfall designated in the currently applicable NPDES Permit.

g.j.    "Combined Sewer System" shall mean the portion of the SSA's Collection System designed to convey municipal sewage and wastewaters (domestic, commercial, and industrial) and stormwater in the same system of pipes to the WWTP or to a CSO Outfall.

h.k.     "Consent Decree" shall mean this Amended Consent Decree, all Appendices hereto, and all plans, schedules, reports, memoranda, or other submittals approved by the Plaintiffs pursuant to the requirements of this Consent Decree or any Appendix hereto. In the event of any conflict between the Consent Decree and any Appendix, this Consent Decree shall control.

i.l.     "CSO Outfall" shall mean an outfall in the Combined Sewer System from which combined sewage and stormwater are discharged and so designated in the currently applicable NPDES Permit.

j.m.     "Date of Lodging" shall mean the date that this Amended Consent Decree is lodged with the Clerk of the Court for the United States District Court for the Middle District of Pennsylvania.

k.n.     "Day" shall mean a calendar day unless expressly stated to be a working day. When the day a report or other deliverable is due under this Consent Decree falls on a Saturday, Sunday, federal holiday, or legal holiday for the SSA, the SSADefendant, Defendant shall have until the next calendar day that is not one of the aforementioned days for submission of such report or other deliverable.

o.     "Defendant" shall mean the SSA until the Closing of the Transaction, after which it shall mean Pennsylvania-American Water Company;

l.p.     "Dry Weather Overflow" shall mean a discharge that occurs at a permitted CSO Outfall that is not caused by precipitation-related Inflow or Infiltration.

m.q.     "Effective Date" shall mean the date set forth in Section XVII (Effective Date) of this Consent Decree.

n.r.　　"EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

o.s.　　"Green Infrastructure Measures" shall mean the range of stormwater control measures that use plant systems, soil systems, permeable pavement, or stormwater management, harvest and reuse, to store, infiltrate, evapotranspire, or reuse stormwater and reduce flows to the Combined Sewer System. Green Infrastructure Measures may include, but shall not be limited to, extended detention wetland areas, green roofs, and cisterns.

p.t.　　"Infiltration" shall mean water entering the Collection System and service connections from the ground through means that include, but are not limited to, defective pipes and sewer walls, pipe and sewer joints, connections, and manhole walls.

q.u.　　"Inflow" shall mean water introduced into the Collection System, including service connections, from sources including, but not limited to, roof leaders, cellars, basement sump pumps, area drains in yards and driveways, foundation drains, cooling water discharges, drains from springs and other wet areas, cracked or broken manhole covers, cross connections from separate storm sewers, catch basins, stormwater, surface run-off, street wash waters, and drainage.

r.v.　　"Long Term Control Plan" or "LTCP" shall mean the currently applicable plan that the SSADefendant develops pursuant to Section V.BV.B.

s.w.　　"MGD" shall mean million gallons per day.

t.x.　　"Nine Minimum Controls" or "NMCs" shall mean those controls identified in Section II.B. of the EPA's April 19, 1994, Combined Sewer Overflow (CSO) Control Policy.

u.y.     "Nine Minimum Controls Plan" or "NMC Plan" shall mean the plan attached hereto as Appendix A, as the same may be revised and updated in accordance with Section V.A. (Nine Minimum Controls) of this Consent Decree and in accordance with the CSO Policy.

v.z.     "NPDES Permit" shall mean the currently effective NPDES Permit No. PA-0026492, effective on October 1, 2009 and amended on May 13, 2011, issued to the SSA by the PADEP. This definition includes any subsequent modification or reissuance of the Permit in accordance with 40 C.F.R Part 123.

w.aa.     "Operating Protocols" shall mean the procedures described, as of the Effective Date of the Original Consent Decree, in Part C, § TWELVE of the NPDES Permit. This definition includes any subsequent modification of the 'Operating Protocols' as set forth in any subsequent modification or reissuance of the NPDES Permit in accordance with 40 C.F.R. Part 123.

bb.     "Original Consent Decree" shall mean the Consent Decree entered by this Court on January 31, 2013 (ECF No. 167), including any modifications that became effective prior to the Effective Date of this Amended Consent Decree.

x.cc.     "PADEP" shall mean the Pennsylvania Department of Environmental Protection and any successor departments or agencies of the Commonwealth of Pennsylvania.

y.dd.     "Paragraph" shall mean a provision of this Consent Decree identified by an Arabic number.

z.ee.     "Parties" shall mean the United States, the PADEP, and the SSADefendant.

ff.     "PAWC" shall mean Pennsylvania-American Water Company, a Pennsylvania Corporation with its principal place of business in Pennsylvania.

aa.gg.   "Plaintiffs" shall mean the United States and the PADEP.—

bb.hh.   "Private Lateral" shall mean that portion of the Collection System not owned by the SSADefendant and used to convey wastewater from a building(s) to a portion of the Collection System owned by the SSADefendant.

cc.ii.     "Sanitary Sewer System" shall mean the current and future portion of the Collection System Sewer designed to convey municipal sewage and wastewaters (domestic, commercial, and industrial) to the WWTP in one system and stormwater in a separate system.

dd.jj.   "Sanitary Sewer Overflow" or "SSO" shall mean an overflow, spill, diversion, or release of wastewater from or caused by the Sanitary Sewer System. This term shall include: (i) discharges to waters of the Commonwealth of Pennsylvania or United States from the Sanitary Sewer System and (ii) any release of wastewater from the Sanitary Sewer System to public or private property that does not reach waters of the United States or the Commonwealth of Pennsylvania, including Building/Private Property Backups.

ee.kk.   "Section" shall mean a portion of this Consent Decree identified by an uppercase Roman Number.

ff.ll.     "Semi-annual Progress Report" shall mean the reports due on a semi-annual basis under Section VIIVII (Reporting).

gg.mm.         "Six-month Period" shall mean a six month period ending on June 30 and December 31.

hh.nn.   "SSA" shall mean Defendantthe Scranton Sewer Authority, a municipal corporation located in Scranton, Pennsylvania. named as the defendant in the Complaint filed in this matter on September 29, 2009 (ECF No. 1).

ii.oo.   "Subparagraph" shall mean a provision of this Consent Decree identified by one or two lowercase letters followed immediately by a period. All Subparagraphs are incorporated into and a part of the Paragraph immediately preceding the Subparagraph.

jj.pp.   "Unpermitted Discharge" shall mean a Dry Weather Overflow or any discharge to waters of the United States or the Commonwealth of Pennsylvania from the Collection System at a location other than an Outfall designated in the NPDES Permit.

kk.qq.   "Waste Water Treatment Plant" or "WWTP" shall mean the waste water treatment plant owned and operated by the SSADefendant located in Scranton, Pennsylvania.

## V.   COMPLIANCE MEASURES

### A.   NINE MINIMUM CONTROLS

9.   The SSA shall, for as long as it is the Defendant, implement the NMCNine Minimum Controls Plan attached hereto as Appendix A in accordance with the provisions and schedules set forth therein. PAWC shall, for as long as it is the Defendant, implement the Amended Nine Minimum Controls Plan attached hereto as Appendix B in accordance with the provisions and schedules set forth therein.

10.   Ongoing Review of the Nine Minimum Control Plan. The SSADefendant shall, on at least an annual basis, evaluate the efficacy of the measures implemented under its Nine Minimum Controls Plan or Amended Nine Minimum Controls Plan, as well as other measures undertaken by the SSADefendant pursuant to this Consent Decree, in reducing the impacts of Combined Sewer Overflows on receiving waters. Based on such evaluation, the SSADefendant shall submit to Plaintiffs for review and approval additional proposed changes to its NMC Plan

or Amended NMC Plan, to the extent any are necessary, which ~~the SSA~~Defendant shall implement, upon approval by Plaintiffs, in accordance with the provisions and schedules set forth therein.

**B.**     **LONG-TERM CONTROL PLAN**

11.     ~~The SSA~~Defendant shall ~~complete and submit a~~ implement the Long Term Control Plan ("LTCP") ~~to both the~~accepted by EPA and the PADEP ~~by December~~ on February 19, 2013, including the projects as described in Appendix C. Section 9.3.~~1, 2012 of the LTCP is amended by the schedule set forth in section 4.2 of the NMC Plan (Flow Optimization), "Operating and Monitoring Protocols~~ for ~~review~~Maximizing Flow to WWTP and ~~approval.~~Outfall 003," attached hereto as Appendix B. This LTCP ~~must~~is designed to:

a.     Meet the requirements of the EPA's CSO Policy, including but not limited to those requirements set forth in Section II.C. of the CSO Policy;

b.     Select a remedy for CSOs that will result in no more than 4 overflows in a typical year to non-channelized tributaries of the Lackawanna River and no more than 9 overflows in a typical year to the Lackawanna River and its channelized tributaries;

c.     Include a schedule for implementation with appropriate interim milestones that concludes no later than December 1, 2037;

~~d.     Include a deadline for substantial completion (plant fully operational) of the BNR Project that concludes no later than August 1, 2014;~~

~~e.~~d.     Include a schedule for constructing CSO controls such as box culverts and storage tanks that is consistent with Appendix ~~B~~C; and

~~f.~~e.     Include a post construction monitoring plan ("PCMP"), which must also meet the requirements of the CSO Policy, including the Policy's requirements that it be "adequate to verify compliance with water quality standards and protection of designated uses as

15

well as to ascertain the effectiveness of the CSO controls" and that it "details the monitoring protocols to be followed, including the necessary effluent and ambient monitoring and, where appropriate, other monitoring protocols such as biological assessments, whole effluent toxicity testing, and sediment sampling."

12.     ~~The SSA~~Defendant shall complete implementation of the LTCP ~~as soon as practicable, but no later than December 1, 2037~~in accordance with the schedule in Appendix C.

13.     ~~The SSA~~Defendant shall undertake a study (the "GI Study") to evaluate the feasibility of implementing Green Infrastructure Measures as part of its long term controls for reducing CSOs from the Collection System. The evaluation in the GI Study must address at least the following criteria: GI site selection, identification and resolution of institutional issues and obstacles, public outreach, design and construction, and monitoring and evaluation. No later than December 1, 2017, ~~the SSA~~Defendant shall submit the completed GI Study to the EPA and to the PADEP.

14.     Following completion of the GI Study, Defendant may submit to the EPA and the PADEP for review and approval pursuant to Section ~~VI~~VI (Review and Approval of Submittals) a modification of the LTCP that alters the CSO controls in the LTCP by incorporating Green Infrastructure Measures. Defendant shall include the following information with any such submission: (1) a description of the specific technology to be applied; (2) the locations where the technology will be used; (3) the design limits of the proposed use of the technology; and (4) the costs of installation and maintenance and who will bear those costs. If  the proposed modification seeks to alter the size of any CSO control in the LTCP, the proposed modification must also include reliable computer modeling and other evidence sufficient to demonstrate that (1) the proposed Green Infrastructure Measures will result in a reduction of wet weather flows into the

Combined Sewer System; (2) during future wet weather events ~~the SSA~~Defendant will continue to achieve such flow reductions; and (3) as a result of the flow reductions achieved as a result of the proposed Green Infrastructure Measures, the proposed modification of the LTCP will achieve the same or better performance, in terms of gallons controlled and the number of CSO activations in a typical year, as the unmodified LTCP.

**C.    GENERAL COMPLIANCE**

15.    Effluent Limits.

a.    ~~Commencing on the Day that~~ Defendant ~~signs this Consent Decree, the SSA~~ shall comply with all final effluent limits set forth in the NPDES Permit.

~~b.    If, on October 1, 2014, the SSA is not in compliance with its annual effluent limitation for the compliance period ending on September 30, 2014, it shall, on or before November 28, 2014, purchase nutrient credits to the extent required in the NPDES Permit in a quantity costing up to the amount of $100,000. The SSA shall use reasonable diligence in obtaining the best value for any money it spends purchasing credits.~~

b.    Defendant shall implement the "Operating and Monitoring Protocols for Maximizing Flow to WWTP and Outfall 003" referenced in section 4.2 of the NMC Plan attached hereto as Appendix B and continue to at all times properly operate and maintain all facilities and systems of treatment and control (and related appurtenances) which are installed or used by the permittee to achieve compliance with the terms and conditions of the NPDES Permit, including those facilities and systems designed to achieve the applicable Chesapeake Bay Nutrient requirements.

16.    Dry Weather Overflows.

a.    All Dry Weather Overflows from the Collection System are prohibited.

b.      ~~The SSA~~Defendant must report all Dry Weather Overflows to the PADEP by telephone at 570-826-2511 within twenty-four hours of when ~~the SSA~~Defendant becomes aware of the Dry Weather Overflow and must provide written notification to the PADEP and the EPA within five Days of when ~~the SSA~~Defendant becomes aware of the Dry Weather Overflow.

c.      Should ~~the SSA~~Defendant detect a Dry Weather Overflow, ~~the SSA~~Defendant shall begin corrective action immediately. ~~The SSA~~Defendant shall inspect the outfall(s) from which the Dry Weather Overflow occurred each subsequent Day until the overflow has been eliminated.

d.      ~~The SSA~~Defendant shall summarize all such Dry Weather Overflows in the Semi-Annual Progress Report required under Section ~~VII~~VII (Reporting). Nothing in this Section shall eliminate or minimize any additional notification or reporting required by the NPDES Permit.

17.      Compliance with Operating Protocols.

a.      ~~Commencing on the Day~~ Defendant ~~signs this Consent Decree, the SSA~~ shall comply with the Operating Protocols regarding flows to the WWTP, which, as of the Effective Date of the Original Consent Decree, are  described in Part C, § TWELVE of the NPDES Permit.

b.      Should ~~the SSA~~Defendant fail to comply with the Operating Protocols described in Subparagraph a. above for more than ten minutes in any 24-hour period, it shall report such failure within 10 Days in writing in accordance with Section ~~XVI~~XVI (Notices and Submissions).

c.      ~~The SSA~~Defendant shall, within 14 Days of a request by the EPA or the PADEP, provide a report in comma-delimited format of the measurements of influent to the

WWTP and discharges from Outfall 003 recorded by its supervisory control and data acquisition (SCADA) system in increments of no more than five minutes. To the extent practicable, the data shall be provided in a single table with each measurement being taken simultaneously. ~~The SSA~~Defendant may not limit its production of SCADA data to the data available from one server or storage location, unless that server or storage location contains all of data available to ~~the SSA~~Defendant for the time period covered by the request.

    d.  Nothing in this Paragraph shall limit the United States' or the PADEP's authority to request other information or information in other formats.

    18.  <u>Identification of Outfalls</u>.

    ~~a.  Prior to the Date of Lodging, the SSA identified the following outfalls that are not currently included in its NPDES Permit:~~

      ~~(i)  McNichols (#083);~~

      ~~(ii)  600 Elm East (#084);~~

      ~~(iii)  600 Elm West (#085);~~

      ~~(iv)  Cedar/Maple (#086);~~

      ~~(v)  Leggetts/Kelly (#087); and~~

      ~~(vi)  Prospect/Locust (#088).~~

    ~~b.  The SSA plugged the Prospect/Locust outfall (#088) and submitted an application to the PADEP on November 28, 2011 requesting an amendment to the NPDES Permit to authorize discharges from the remaining outfalls and to permanently remove the following outfalls from the NPDES Permit: #010, #039, #041, #042, #046, #054, and #064.~~

    ~~c.~~<u>a.</u>  ~~The SSA~~<u>Defendant</u> hereby affirms that it has conducted a thorough study of its collection system and has identified to the United States and the PADEP, to the best of its

knowledge, all of the outfalls from which pollutants may enter waters of the United States or the Commonwealth of Pennsylvania.

d.b.     The SSADefendant shall not discharge pollutants into waters of the United States or the Commonwealth of Pennsylvania from any outfall not identified in its NPDES Permit or in Subparagraph 18.a. above.

e.c.     Should the SSADefendant discover an outfall that is not identified in Subparagraph 18.a or in its NPDES Permit, it shall notify the United States and the PADEP in writing in accordance with Section XVIXVI (Notices and Submissions) within five Days of the discovery of the outfall. The notice shall include a description of the outfall, its location, the portion of the collection system that drains to the outfall, the description of any pathway by which discharges from the outfall might reach waters of the United States or the Commonwealth of Pennsylvania, any information as to whether stormwater is included in the discharges from the outfall, and any information that might indicate whether pollutants have been discharged from the outfall. Within 60 Days of the discovery of the outfall, Defendant shall submit to the EPA and the PADEP for review and approval pursuant to Section VIVI (Review and Approval of Submittals) a plan that addresses how the newly discovered outfall(s) will be addressed consistent with SSA'sDefendant's applicable NPDES Permit.

19.     <u>Elimination of Sanitary Sewer Overflows</u>. SSOs are prohibited.

20.     <u>Reporting Planned Changes and Non-Compliance</u>.

a.     The SSADefendant shall comply with the provisions of the NPDES Permit requiring the reporting of anticipated and unanticipated non-compliance with the NPDES Permit, which, as of the Effective Date, are described in Part A, § III.C of the NPDES Permit.

b. Whenever written notice of non-compliance is required to be given to the PADEP pursuant to the NPDES Permit, ~~the SSA~~Defendant shall simultaneously notify the EPA in accordance with Section ~~XVI~~XVI (Notices and Submissions).

## VI. REVIEW AND APPROVAL OF SUBMITTALS

21. For each plan, report, schedule or other document submitted by ~~the SSA~~Defendant for EPA and PADEP approval (other than a request to modify this Consent Decree submitted pursuant to Section ~~XIX~~XIX (Modification)) the EPA, after consultation with the PADEP, may (a) approve the submittal, in whole or in part; (b) disapprove the submittal, in whole or in part; (c) approve the submittal upon specified conditions, directing ~~the SSA~~Defendant to modify its submission; or (d) any combination of the above. If the EPA approves the submittal, the EPA shall notify ~~the SSA~~Defendant in writing. If the submittal is disapproved in whole or in part, or approved with conditions, the EPA shall describe the deficiencies or conditions in writing so that ~~the SSA~~Defendant can make the required modifications and provide the EPA with a modified submittal. ~~The SSA~~Defendant may request a meeting and/or conference call with the EPA to discuss the deficiencies, but no such request or meeting shall extend any deadlines set forth in this Section.

22. Within 60 Days following receipt of any notice from the EPA disapproving a submittal or directing modification of a submittal pursuant to the preceding Paragraph (or within such longer time set forth in the notice or agreed to by the ~~parties), the SSA~~Parties), Defendant shall submit a modified submittal to the EPA and the PADEP for approval, subject only to ~~the SSA's~~Defendant's right to invoke the dispute resolution procedures set forth in Section ~~XII~~XII (Dispute Resolution). The modified submittal shall correct any deficiencies identified by the EPA, and conform to any directions set forth in the notice provided pursuant to the preceding Paragraph. If ~~the SSA~~Defendant fails to submit a modified document to the EPA within the 60-

Day period, the EPA retains the right to modify or develop any disapproved or conditionally approved portion of the submittal. ~~The SSA~~Defendant shall implement any such plan, report, schedule or other submittal as modified or developed by the EPA, subject only to ~~the SSA's~~Defendant's right to invoke the dispute resolution procedures set forth in Section ~~XII~~XII (Dispute Resolution).

23.     In the event that a resubmitted plan, report, schedule or other document or portion thereof is disapproved in whole or in part or approved with conditions by the EPA, the EPA shall provide ~~the SSA~~Defendant with a written notice describing the remaining deficiencies or conditions for approval. The EPA may require ~~the SSA~~Defendant to correct the deficiencies or satisfy the conditions for approval of the submittal within a specified time frame, or the EPA may modify or develop any disapproved or conditionally approved portion of the submittal. ~~The SSA~~Defendant may request a meeting and/or conference call with the EPA to discuss the deficiencies, but no such request or meeting shall extend any deadlines set forth in this Section. Following receipt of a notice requiring ~~the SSA~~Defendant to correct deficiencies or satisfy conditions for approval, ~~the SSA~~Defendant shall submit a modified document in accordance with the EPA's directions, subject only to ~~the SSA's~~Defendant's right to invoke the dispute resolution procedures set forth in Section ~~XII~~XII (Dispute Resolution).

24.     Notwithstanding the receipt of a notice of disapproval pursuant to Paragraph ~~21~~21 or ~~23~~23, above, ~~the SSA~~Defendant shall proceed, if directed by the EPA, to take any action required by any non-deficient portion of ~~the SSA's~~Defendant's submission, if such action can be undertaken independent of the deficient portion of ~~the SSA's~~Defendant's submission. Implementation of any non-deficient portion of a submission shall not relieve ~~the SSA~~Defendant

of any liability for stipulated penalties under Section ~~XX~~ X (Stipulated Penalties) for the deficient portion(s).

25.     Other than a modification of the LTCP, all plans and studies submitted pursuant to this Consent Decree shall be incorporated herein as part of this Consent Decree upon approval by the EPA. A modification of the LTCP shall be incorporated into this Consent Decree only if the Parties enter into a written agreement pursuant to Paragraph ~~88~~ 89.

26.     ~~The SSA~~ Defendant shall take all lawful and appropriate actions to facilitate the implementation of this Consent Decree, including prompt review and approval of any appropriate and responsive bids, contracts, or other documents, and, if applicable, prompt review and approval of any appropriate schedule of work necessary to maintain compliance with this Consent Decree.

27.     If the EPA fails to take action under Paragraph 21 with respect to a submittal or modified submittal, other than the LTCP or a proposal to modify this Consent Decree, within 90 Days of receiving the submittal or modified submittal, the EPA shall extend any subsequent deadlines dependent upon approval of the submittal by the number of Days in excess of 90 that elapsed between: (i) the date that the EPA and the PADEP received the submittal or modified submittal; and (ii) the date that the EPA took action under Paragraph 21. Such extension will not be effective unless the EPA grants it in writing. Defendant may invoke dispute resolution under Section XII (Dispute Resolution) with respect to any disputes under this Paragraph.

## VII.     REPORTING

### A.     REPORTS

28.     ~~The SSA~~ Defendant will provide to the EPA copies of all written notifications and reports that ~~the SSA~~ Defendant is required to submit to the PADEP relevant to this Consent Decree.

29.     On January 31 and July 31 of every year commencing with the first full Six-month Period after Entry of this Consent Decree and continuing until termination of this Consent Decree, ~~the SSA~~Defendant will submit to the EPA and the PADEP a progress report ("Semi-annual Progress Report") regarding the implementation of the requirements of this Consent Decree in the previous Six-month Period. The Semi-Annual Progress Report will include at a minimum:

a.      A statement setting forth the deadlines and other terms that ~~the SSA~~Defendant was required by this Consent Decree to meet since the date of the last Semi-annual Progress Report, whether and to what extent ~~the SSA~~Defendant has met these requirements, and the reasons for any noncompliance;

b.      A general description of the work completed within the prior Six-month Period, and a projection of work to be performed pursuant to this Consent Decree during the next or succeeding Six-month Period;

c.      A summary of all contacts with the EPA and the PADEP during the reporting period relating to CSOs, SSOs, or implementation of the BNR Project;

d.      A statement of any exceedances of NPDES Permit limitations; and,

e.      A summary of all CSOs, SSOs and Unpermitted Discharges occurring within the Six-month Period including the actual or estimated frequency, duration, and volume of each CSO, SSO, and Unpermitted Discharge.

**B.      CERTIFICATION AND ADMISSIBILITY**

30.     Any report or plan relating to monitoring data or any representation made by ~~the SSA~~Defendant as to its compliance with this Consent Decree that ~~the SSA~~Defendant is required by this Consent Decree to submit, including reports or plans, shall be signed by an official or authorized agent of ~~the SSA~~Defendant and shall include the following certification:

I certify under penalty of law that the document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gathered and evaluated the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

31.     ~~The SSA~~Defendant shall not object to the authenticity of any report, plan, or other submission prepared in accordance with Paragraph ~~30~~30 or the information contained in said report, plan or submission in any proceeding to enforce this Consent Decree.

## VIII.   FUNDING

32.     Compliance with the terms of this Consent Decree by ~~the SSA~~Defendant is not conditioned on the receipt of federal or state grant or loan funds or upon ~~the SSA's~~Defendant's financial capabilities. In addition, ~~the SSA's~~Defendant's failure to comply is not excused by the lack of federal or state grant or loan funds, or by the processing of any applications for the same, or by ~~the SSA's~~Defendant's financial capabilities.

## IX.     CIVIL PENALTY

~~33.     The SSA shall pay the sum of $170,000 plus an additional sum for interest as explained below, to the United States as a civil penalty. Payment shall be made in two installments. The first installment of $70,000 shall be made within 30 Days after the Effective Date. The second installment of $100,000 plus interest shall be made within six months of the Effective Date.  Interest shall accrue from the Date of Lodging at the rate specified in 28 U.S.C. § 1961 as of the Date of Lodging.~~

33.     ~~Defendant shall pay the~~The SSA has paid in full to the United States the civil penalty described in Section IX.33 of the Original Consent Decree.

25

34.     Defendant shall pay any civil penalty due to the United States by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instruction to be provided to ~~the SSA~~Defendant, following lodging of the Consent Decree, by the Financial Litigation Unit of the U.S. Attorney's Office for the Middle District of Pennsylvania, 235 N. Washington Ave., Suite 311, Scranton, PA 18503, Phone: 570-348-2800. At the time of payment, Defendant shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States v. Scranton Sewer Authority*, and shall reference the civil action number 3:09-cv-1873 and DOJ case number 90-5-1-1-08778, to the United States in accordance with Section ~~XVI~~XVI (Notices and Submissions) and to:

> EPA Region III Docket Clerk
> Office of Enforcement and Compliance Assistance (3EC00)
> 1650 Arch Street
> Philadelphia, PA 19103.

35.     ~~The SSA shall pay the sum of $170,000, plus an additional sum for interest as explained below, to the PADEP as a civil penalty. Payment shall be made in two installments. The first installment of $70,000 shall be made within 30 Days after the Effective Date. The second installment of $100,000 plus interest shall be made within six months of the Effective Date. Interest shall accrue from the Date of Lodging at the rate specified in 28 U.S.C. § 1961 as of the Date of Lodging. The payment shall be made by corporate check or the like made payable to "Commonwealth of Pennsylvania, Clean Water Fund" and sent to Program Manager, Clean Water Program, Department of Environmental Protection, Northeast Regional Office, 2 Public Square, Wilkes-Barre, Pennsylvania 18701-1915.~~

35.     The SSA has paid in full to the PADEP the civil penalty described in Section IX.35 of the Original Consent Decree.

26

## X.     STIPULATED PENALTIES

36.     The SSA shall be liable for stipulated penalties to the United States and the PADEP for violations of ~~this Consent Decree specified below. A violation~~the Original Consent Decree as specified in the Original Consent Decree, until the Effective Date of this Amended Consent Decree. The SSA shall be liable for stipulated penalties to the United States and the PADEP for violations of this Amended Consent Decree as specified below up to, but not including, the day on which the Closing of the Transaction occurs. PAWC shall be liable for stipulated penalties to the United States and the PADEP for violations of this Amended Consent Decree as specified below beginning on the day on which the Closing of the Transaction occurs. If the Closing of the Transaction does not occur, the SSA shall remain liable for stipulated penalties to the United States and to the PADEP for violations of this Amended Consent Decree as specified below, until termination of this Amended Consent Decree pursuant to Section XX (Termination).

~~36.~~     A violation of this Amended Consent Decree includes failing to perform any obligation required by the terms of this Consent Decree, including any work plan or schedule approved under this Consent Decree, according to all applicable requirements of this Consent Decree, and within the specified time schedules established by or approved under this Consent Decree.

37.     ~~Late Payment of Civil Penalty. If Defendant fails to pay the civil penalty required to be paid under Section IX of this Decree (Civil Penalty) when due, Defendant shall pay a stipulated penalty of $500 per Day for each Day that the payment is late.~~

38.     Reporting Requirements. For each failure to submit a timely and adequate plan, report, schedule, written notice, or other submission required by this Decree, ~~the SSA~~Defendant shall pay the following stipulated penalties to Plaintiffs per violation per Day:

| Period of Noncompliance | Penalty per Day per Violation |
| --- | --- |
| Days 1-30 | $500 |
| Days 31-60 | $750 |
| Days 61-90 | $1,000 |
| Days 91 and over | $1,500 |

39.    Compliance Milestones.

a.    For each failure to comply with any deadline for completion of construction or for achievement of full operation set forth in the implementation schedule developed and approved pursuant to Paragraph(s) 11 and 12, the SSA11 and 12, Defendant shall pay the following stipulated penalties to Plaintiffs per violation per Day:

| Period of Noncompliance | Penalty per Day per Violation |
| --- | --- |
| Days 1-30 | $500 |
| Days 31-60 | $750 |
| Days 61-90 | $1,000 |
| Days 91 and over | $2,000 |

b.    For each failure to comply with a requirement of, or meet a deadline in, the Amended Nine Minimum Controls Plan pursuant to Paragraph 99 of Section V.AV.A (Nine Minimum Controls), the SSADefendant shall pay the following stipulated penalties to Plaintiffs per violation per Day:

| Period of Noncompliance | Penalty per Day per Violation |
| --- | --- |
| Days 1-30 | $500 |
| Days 31-60 | $750 |
| Days 61-90 | $1,000 |
| Days 91 and over | $2,000 |

40.    General Compliance.

a.    For each discharge in violation of Subparagraph 1616.a or for each discharge in violation of Paragraph 1919 that reaches waters of the United States or the Commonwealth of Pennsylvania, the SSADefendant shall pay the following stipulated penalties based on the volume of the discharge:

| Volume: | The penalty shall be: |
|---|---|
| Less than 100 gallons | $100 |
| 100 to 2,499 gallons | $750 |
| 2,500 to 9,999 gallons | $1,250 |
| 10,000 to 99,999 gallons | $3,000 |
| 100,000 to 999,999 gallons | $5,000 |
| 1 million gallons or greater | $10,000 |

b.      For each discharge in violation of Subparagraph ~~17.a, the SSA~~17.a, Defendant shall pay the following stipulated penalties based on the difference between the volume of combined sewage that ~~the SSA~~Defendant would have taken into the WWTP while it was discharging from Outfall 003 if it had complied with Paragraph 17.a., and the volume of combined sewage that it actually took into the WWTP while it was discharging from Outfall 003:

| Difference in Volume: | The penalty shall be: |
|---|---|
| Up to two million gallons | $2,500 |
| More than two million gallons, but not more than four million gallons | $5,000 |
| More than four million gallons, but not more than six million gallons | $7,500 |
| More than six million gallons | $10,000 |

c.      For each failure to comply with Subparagraph ~~18.d., the SSA~~18.b., Defendant shall pay the following stipulated penalties to Plaintiffs per violation per Day:

| Period of Noncompliance | Penalty per Day per Violation |
|---|---|
| Days 1-30 | $500 |
| Days 31-60 | $1,000 |
| Days 61-90 | $2,000 |
| Days 91 and over | $3,000 |

~~d.      For failure to comply with Subparagraph 15.b, the SSA shall pay to the Plaintiffs a stipulated penalty equal to the difference between $100,000 and the amount paid for nutrient credits. The unavailability of credits is not a defense to liability for penalties under this Subparagraph. Thus, if the SSA were to need 10,000 pounds of credits and were to purchase that amount for $50,000 in accordance with Subparagraph 15.b, then this Subparagraph would have no effect.  However, if the SSA were to need 10,000 pounds of credits and were to purchase only~~

~~5,000 pounds at a cost of $25,000, it would have to pay a stipulated penalty equal to $100,000 minus the $25,000 it actually spent, or $75,000.~~

d.        [Reserved.]

e.        For each failure to comply with Paragraph 15, other than a failure to comply with an annual effluent limit, ~~the SSA~~Defendant shall pay the following stipulated penalties to Plaintiffs:

| Type of Permit Limit: | Penalty per violation: |
| --- | --- |
| Daily or Instantaneous | $500 |
| Weekly | $1,500 |
| Monthly | $3,000 |

f.        For each failure to provide telephonic notification in compliance with Paragraph ~~16.b, the SSA~~16.b, Defendant shall pay a stipulated penalty of $1,000 per occurrence.

g.        For each failure to comply with Subparagraphs ~~16~~16.~~ec~~c or ~~17~~17.~~ec~~c, ~~the SSA~~Defendant shall pay the following stipulated penalties to Plaintiffs per violation per Day:

| Period of Noncompliance | Penalty per Day per Violation |
| --- | --- |
| Days 1-30 | $500 |
| Days 31-60 | $750 |
| Days 61-90 | $1,000 |
| Days 91 and over | $2,000 |

41.    If any person discovers an outfall that existed as of the Effective Date, but that is not included in ~~the SSA's~~Defendant's NPDES Permit ~~or identified in Subparagraph 18. a, the SSA~~, Defendant shall pay a stipulated penalty of $2,500.

42.    Access Requirements. For each failure to allow access to the WWTP in accordance with Section ~~XV~~XV (Information Collection and Retention), below, ~~the SSA~~Defendant shall pay stipulated penalties of $1,000 to Plaintiffs per Day.

43.    Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue

to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

44. For stipulated penalties incurred ~~more than one year~~ after the Effective Date of the Original Consent Decree, the amount of penalties for which Defendant is liable shall be multiplied by the quotient of: (i) the maximum penalty under 33 U.S.C. § 1319(d) as adjusted pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. 101-410, 104 Stat. 890, as amended; and (ii) $37,500.

45. Defendant shall pay stipulated penalties to the United States and the PADEP within 30 Days of a written demand by either Plaintiff. Defendant shall pay 50% of the total stipulated penalty amount due to the United States and 50% percent to the PADEP. The Plaintiff making a demand for payment of a stipulated penalty shall simultaneously send a copy of the demand to the other Plaintiff.

46. Each Plaintiff may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

47. Stipulated penalties shall continue to accrue as provided in Paragraph ~~43~~43, during any Dispute Resolution, but need not be paid until the following:

a. If the dispute is resolved by agreement or by a decision of the EPA that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 Days of the effective date of the agreement or the receipt of the EPA's decision or order.

b. If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing,

together with interest, within 60 Days of receiving the Court's decision or order, except as provided in Subparagraph c, below.

c. If any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

48. Obligations Prior to the Effective Date. Upon the Effective Date, the stipulated penalty provisions of this Decree shall be retroactively enforceable to the date the SSA signed this Decree, with regard to any and all violations that have occurred after the SSA signed, provided that stipulated penalties that may have accrued prior to the Effective Date may not be collected unless and until this Consent Decree is entered by the Court.

48. [Reserved.]

49. Defendant shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 3434, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

50. Defendant shall pay stipulated penalties owing to the PADEP by corporate check or the like made payable to "Commonwealth of Pennsylvania, Clean Water Fund" and sent to Program Manager, Clean Water Program, Department of Environmental Protection, Northeast Regional Office, 2 Public Square, Wilkes-Barre, Pennsylvania 18701-1915. The check shall be accompanied by a transmittal letter which shall state that the payment is for stipulated penalties and for which violation(s) the penalties are being paid.

51. If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in

28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States or the PADEP from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

52. Subject to the provisions of Section ~~XIII~~XIII (Effect of Settlement), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States or the PADEP for Defendant's violation of this Consent Decree or applicable law. Where a violation of this Consent Decree is also a violation of the Clean Water Act, 33 U.S.C. §§ 1251-1387, or the Pennsylvania Clean Streams Law, 35 Pa. Stat. Ann. §§ 691.1-691.1001, Defendant shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation.

## XI.    FORCE MAJEURE

53. "Force Majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant; its agents, consultants, or contractors; or any entity controlled by Defendant; that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation. The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential Force Majeure and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible. "Force Majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

54. Any delays in implementation of this Consent Decree shall not be excused merely because ~~the SSA~~Defendant notified the EPA and/or the PADEP of the anticipated delay, regardless of whether such notification is contained in a report required under Section ~~VII~~VII (Reporting) or any other communication.

33

55.     When ~~the SSA~~Defendant knows, or should have known by the exercise of reasonable diligence, of an event that might delay completion of any requirement of this Consent Decree, whether or not the event is a Force Majeure, ~~the SSA~~Defendant will notify the EPA and the PADEP, in writing, within 14 Days after ~~the SSA~~Defendant first knew, or in the exercise of reasonable diligence under the circumstances, should have known of such event. The notice will indicate whether ~~the SSA~~Defendant claims that the delay should be excused due to a Force Majeure. The notice shall describe in detail the basis for ~~the SSA's~~Defendant's contention that it experienced a Force Majeure delay, the anticipated duration of the delay, the cause or causes of the delay, all actions taken or to be taken to prevent or minimize the delay, and the timetable by which those measures will be implemented. Failure to timely notify the EPA and the PADEP may, at the EPA's option, in consultation with the PADEP, preclude ~~SSA~~Defendant from asserting Force Majeure for the period beyond 14 Days it took ~~SSA~~Defendant to provide the required notice.

56.     If, after consultation with the PADEP, the EPA finds that a delay in performance is, or was, caused by a Force Majeure, it will extend the time for performance, in writing, for a period to compensate for the delay resulting from such event and stipulated penalties will not be due to the United States or the PADEP for such period. If the EPA does not grant such an extension within 30 days of receiving ~~the SSA's~~Defendant's written notice of the Force Majeure, ~~the SSA~~Defendant may consider the request for an extended time for performance to have been denied, and ~~the SSA~~Defendant may invoke dispute resolution.

57.     In proceedings on any dispute regarding a delay in performance, the dispute resolution provisions of Section ~~XII~~XII (Dispute Resolution) will apply, and ~~the SSA~~Defendant

will have the burden of proving that the delay is, or was, caused by a Force Majeure and that the amount of additional time requested is necessary to compensate for that event.

58.     Compliance with a requirement of this Consent Decree shall not by itself constitute compliance with any other requirement. An extension of one compliance date based on a particular event will not extend any other compliance date. ~~The SSA~~Defendant will make an individual showing of proof regarding the cause of each delayed incremental step or other requirement for which an extension is sought. ~~The SSA~~Defendant may petition for the extension of more than one compliance date in a single request.

## XII.     DISPUTE RESOLUTION

59.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.

60.     Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Defendant sends the United States and the PADEP a written "Notice of Dispute." Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 30 Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States, in consultation with the PADEP, shall be considered binding unless, within 30 Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

61.     Formal Dispute Resolution. Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States and the PADEP a written "Statement of Position" regarding the matter in dispute. The

Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

62.     The United States, in consultation with the PADEP, shall serve its Statement of Position within 30 Days of receipt of Defendant's Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

63.     Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States and the PADEP, in accordance with Section ~~XVI~~XVI (Notices and Submissions), a motion requesting judicial resolution of the dispute. The motion must be filed within 30 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

64.     The United States, in consultation with the PADEP, shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court. Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

65.     <u>Standard of Review</u>.

        a.      <u>Disputes Concerning Matters Accorded Record Review</u>. Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph ~~63~~63

pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by the EPA and/or the PADEP under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendant shall have the burden of demonstrating, based on the administrative record, that the position of the United States and/or the PADEP is arbitrary and capricious or otherwise not in accordance with law.

        b.    <u>Other Disputes</u>. Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 6363, Defendant shall bear the burden of demonstrating by a preponderance of the evidence that its position complies with this Consent Decree and that Defendant is entitled to relief under applicable law.

        66.    The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 47.47. If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XX (Stipulated Penalties).

### XIII.  EFFECT OF SETTLEMENT

       67.    ~~SSA hereby knowingly waives its right to appeal or challenge the validity of Part C.I.SEVEN.I.B.(5) (Compliance with effluent limitations) of the NPDES Permit, including rights that may be available under Section 4 of the Pennsylvania Environmental Hearing Board Act, Act of July 13, 1988, P.L. 530, 35 P.S. Section 7514; the Pennsylvania Administrative Agency~~

~~Law, 2 Pa. C.S. Section 103(a) and Chapters 5A and 7A; or any other provision of law. This~~ ~~Paragraph, and the SSA's waiver hereunder, shall expire at midnight on September 30, 2014.~~

67.     [Reserved.]

68.     This Consent Decree resolves the civil claims of the United States for the violations alleged in the United States' Complaint through the Date of Lodging of this Consent Decree and the civil claims of the PADEP for the violations alleged in the PADEP's Complaint in Intervention through the Date of Lodging of this Consent Decree.

69.     The United States and the PADEP reserve any and all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 68. This Consent Decree shall not be construed to limit the rights of the United States or the PADEP to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph 68. The United States and the PADEP further reserve all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, the POTW, whether related to the violations addressed in this Consent Decree or otherwise.

70.     In any subsequent administrative or judicial proceeding initiated by the United States or the PADEP for injunctive relief, civil penalties, or other appropriate relief relating to the Facility, Defendant shall not assert, and may not maintain, any defense or claim against Plaintiffs based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the PADEP in the subsequent proceeding were or should have

been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 6767 of this Section.

71.     This Consent Decree does not limit or affect the rights of Defendant or of the United States or the PADEP against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

72.     This Consent Decree does not create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

### XIV.   NOT A PERMIT

73.     This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations. Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced by the United States or the PADEP pursuant to any such laws, regulations, or permits, except as set forth herein. The United States and the PADEP do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, 33 U.S.C. §§ 1251-1387, or with any other provisions of federal, state, or local laws, regulations, or permits.

74.     This Consent Decree does not authorize or approve the construction of any physical structure or facilities, or the modification of any existing treatment works or sewer system.

## XV.   INFORMATION COLLECTION AND RETENTION

75.     The United States and the PADEP, and their representatives, contractors,

consultants, and attorneys shall have the right of entry into and upon ~~the SSA's~~Defendant's

WWTP and Sewer System, at all reasonable times, upon proper presentation of credentials, to:

a.      monitor the progress of activities required under this Consent Decree;

b.      verify any data or information submitted to the United States or the

PADEP in accordance the terms of to this Consent Decree;

c.      obtain samples and, upon request, splits of any samples taken by ~~the~~

~~SSA~~Defendant or its representatives, contractors or consultants;

d.      obtain documentary evidence, including photographs and similar data;

e.      inspect and evaluate any portion or portions of the POTW;

f.      inspect and review any records required to be kept under the terms and

conditions of the Consent Decree, ~~the SSA's~~Defendant's NPDES Permit, any future

modifications or renewals thereof, and the CWA; and

g.      assess ~~the SSA's~~Defendant's compliance with this Consent Decree.

76.     Upon request, Defendant shall provide the EPA and the PADEP or their

authorized representatives splits of any samples taken by Defendant. Upon request, the EPA and

the PADEP shall provide Defendant splits of any sample taken by the EPA or the PADEP.

77.     Defendant shall retain the following documents and electronically stored data for

at least five years from the date they are created:

a.      All complaints received by Defendant or its contractors or agents from any

person or entity pertaining to the matters addressed by this Consent Decree;

b.      All documents required to be created, submitted, or maintained pursuant to

Appendix A or B (Nine Minimum Controls ~~Plan~~Plans);

c.　　　Documentation of all measures undertaken by Defendant to comply with the terms of this Consent Decree; and

d.　　　SCADA data or other data regarding compliance with Paragraph ~~17~~17 (Compliance with Operating Protocols).

78.　　Defendant shall retain the following documents and electronically stored data for at least five years after termination of this Consent Decree:

a.　　　All reports, plans, permits, and documents submitted to the EPA or the PADEP pursuant to this Consent Decree, including all underlying research and data;

b.　　　All data developed by, or on behalf of, Defendant pursuant to any post-construction monitoring activities; and

c.　　　All reports and data regarding water quality~~;~~.

79.　　Upon the closing of the transaction, the SSA shall transfer to PAWC all documents and electronically stored data in its possession, custody, or control that it is required to preserve pursuant to Paragraphs 77–78. PAWC shall retain any such transferred documents and electronically stored data for the applicable time period under Paragraph 77 or 78.

~~79.~~80.　　The information-retention requirements in this Section establish minimum retention periods that shall apply regardless of any contrary corporate or institutional policies or procedures but do not excuse Defendant from any legal requirement to retain documents or data for longer periods of time. At any time during this information-retention period, upon request by the United States or the PADEP, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

~~80.~~81.　　At the conclusion of the information-retention period provided in Paragraph 79, Defendant shall notify the United States and the PADEP at least 90 Days prior to the destruction

of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States or the PADEP, Defendant shall deliver any such documents, records, or other information to the EPA or the PADEP. Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If Defendant asserts such a privilege, it shall provide the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of each author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Defendant. However, no final documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

81.82.  Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

82.83.  This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or the PADEP pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

### XVI.  NOTICES AND SUBMISSIONS

83.84.  Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

As to the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044-7611
Re: DOJ No. 90-5-1-1-08778

As to the EPA:

Chief
NPDES Enforcement Branch (3WP42)
Water Protection Division
U.S. Environmental Protection Agency, Region 3
1650 Arch St.
Philadelphia, PA 19103-2029

And

Christopher A. Day
Office of Regional Counsel (3RC20)
U.S. Environmental Protection Agency, Region 3
1650 Arch St.
Philadelphia, PA 19103-2029

As to the PADEP:

Program Manager – Clean Water Program
Department of Environmental Protection
Northeast Regional Office
2 Public Square
Wilkes-Barre, PA 18701-1915

As to the SSA: (when it is Defendant):

Executive Director
Scranton Sewer Authority
312-314 North Adams Avenue
Scranton, PA 18503-1501

Jeffrey Belardi
Belardi Law Offices
410 Spruce Street, 4th Floor
Scranton, PA  18503

As to PAWC (when it is Defendant):

Plant Manager
Cedar Ave. & Breck St.
Scranton, PA  18505

President
Pennsylvania-American Water Company
800 West Hersheypark Drive
Hershey, PA 17033

Vice-President, General Counsel and Secretary
Pennsylvania-American Water Company
800 West Hersheypark Drive
Hershey, PA 17033

84.85.  Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

85.86.  Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XVII.  EFFECTIVE DATE

86.87.  The Effective Date of this Amended Consent Decree shall be the date up011on which this Amended Consent Decree is entered by the Court; provided, however, that Defendant hereby agrees that it shall be bound to perform duties scheduled to occur prior to the Effective Date. In the event the United States withdraws or withholds consent to this Consent Decree before entry, or the Court declines to enter the Consent Decree, then the preceding requirement to perform duties scheduled to occur before the Effective Date shall be void..

## XVIII. RETENTION OF JURISDICTION

87.88.  The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders

44

modifying this Decree, pursuant to Sections ~~XII~~XII (Dispute Resolution) and ~~XIX~~XIX (Modification), or effectuating or enforcing compliance with the terms of this Decree.

## XIX.   MODIFICATION

~~88.~~89.   Except as otherwise expressly set forth in this Consent Decree, the terms of this Consent Decree, including the attached appendices and the LTCP approved pursuant to this Consent Decree, may be modified only by a subsequent written agreement signed by all of the Parties or their successors in interest. Where the modification constitutes a material change to this Consent Decree, it shall be effective only upon approval by the Court.

~~89.~~90.   Any disputes concerning modification of this Consent Decree shall be resolved pursuant to Section ~~XII~~XII (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph ~~65~~65, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XX.   TERMINATION

~~90.~~91.   After Defendant has: (i) completed implementation of the requirements of Section ~~V~~V (Compliance Measures); (ii) certified that all construction required by the Long-Term Control Plan is complete and that the Long-Term Control Plan has been fully implemented; (iii) completed post construction monitoring as required by the Long-Term Control Plan; (iv) submitted a PCMP report to the EPA and the PADEP; (v) demonstrated in the PCMP report that any remaining CSOs will not cause ~~the SSA~~Defendant to violate the CSO Policy or its NPDES Permit; (vi) satisfactorily complied, as determined by the EPA, with its NPDES Permit for a period of 12 months; and (vii) paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree; Defendant may serve upon the United States and the PADEP a

"Request for Termination" stating that Defendant has satisfied those requirements, together with all necessary supporting documentation.

91.92.  Following receipt by the United States and the PADEP of Defendant's Request for Termination, the Parties shall confer informally concerning the request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree. If the United States after consultation with the PADEP agrees that the Consent Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Consent Decree.

92.93.  If the United States after consultation with the PADEP does not agree that the Consent Decree may be terminated, Defendant may invoke Dispute Resolution under Section XIIXII (Dispute Resolution). However, Defendant shall not seek formal dispute resolution under Paragraph 6161 of any dispute regarding termination until at least 90 Days after service of its Request for Termination.

## XXI.   LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

93.94.  This Amended Consent Decree will be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the public comments regarding this Consent Decree disclose facts or considerations which indicate that this Consent Decree is inappropriate, improper, or inadequate. Defendant consentsThe SSA and PAWC consent to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Consent Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Consent Decree.

## XXII.  SIGNATORIES/SERVICE

94.95.  Each undersigned representative of a Defendant and the PADEP and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

95.96.  This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXIII. COSTS OF SUIT

96.97.  The PartiesThe United States, the PADEP, the SSA and PAWC shall bear their own costs of this action, including attorneys' fees, except that the United States and the PADEP shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant.

## XXIV. INTEGRATION

97.98.  This Amended Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the PartiesUnited States, the PADEP, the SSA and PAWC with respect to the settlement embodied in the Decree and supersedes the Original Consent Decree, all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. Other than deliverables that are subsequently submitted and approved pursuant to this Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Consent Decree or the settlement it represents, nor shall it be used in construing the terms of this Consent Decree.

## XXV.  APPENDICES

98.99.  The following Appendices are attached to, and a part of, this Consent Decree:

"Appendix A" is the Nine Minimum Controls Plan; and "Appendix B" is the Amended Nine

Minimum Controls Plan; Appendix "C" is a description of the projects in the approved Long

Term Control Plan and the schedule for constructing those projects; and "Appendix D" is the

form of the notice to be filed by Defendant within one business day of the Closing of the

Transaction.

"Appendix B" is the SSA's schedule for constructing CSO controls.

## XXVI. FINAL JUDGMENT

99.100.        Upon approval and entry of this Consent Decree by the Court, this

Consent Decree shall constitute a final judgment of the Court as to the United States, the PADEP

and Defendant.   The Court finds that there is no just reason for delay and, therefore, enters this

judgment as a final judgment under Federal Rules of Civil Procedure 54 and 58.

SO ORDERED THIS _____ DAY OF _____, 2012_____, 2016

_____
HON. JOHN E. JONES
UNITED STATES DISTRICT JUDGE

THE UNDERSIGNED PARTIES enter into this Amended Consent Decree in the matter of *United States v. Sewer Authority of the City of Scranton*.

FOR THE UNITED STATES OF AMERICA:

_____
~~IGNACIA S. MORENO~~
JOHN C. CRUDEN
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

_____        _____
Dated                                   DANIEL S. SMITH
                                        ~~Trial Attorney~~
                                        Senior Counsel
                                        Environmental Enforcement Section
                                        Environment and Natural Resources Division
                                        U.S. Department of Justice
                                        P.O. Box 7611, Ben Franklin Station
                                        Washington, D.C. 20044
                                        601 D Street NW
                                        Washington, D.C. 20004
                                        (202) 305-0371 (voice)
                                        (202) 616-6583 (fax)
                                        ~~dan.smith2@usdoj.gov~~dan.smith2@usdoj.gov

Of Counsel:

~~PETER J. SMITH~~
BRUCE D. BRANDLER
U.S. Attorney
Middle District of Pennsylvania

MARK E. MORRISON
Assistant United States Attorney
Chief, Civil Division
U.S. Attorney's Office
228 Walnut Street, Suite 220
P.O. Box 11754
Harrisburg, PA 17108-1754
Phone: (717) 221-4482 x247
Fax: (717) 221-2246

THE UNDERSIGNED PARTIES enter into this Amended Consent Decree in the matter of *United States v. Sewer Authority of the City of Scranton*.

---

MARK POLLINS
~~PAMELA J. MAZAKAS~~
~~Deputy~~ Director
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency

---

SUSHILA NANDA
Senior Attorney Advisor
~~MARK POLLINS~~
~~Director,~~ Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency

---

~~SUSHILA NANDA~~
~~Senior Attorney Advisor~~
~~Office of Civil Enforcement~~
~~U.S. Environmental Protection Agency~~

THE UNDERSIGNED PARTIES enter into this Amended Consent Decree in the matter of *United States v. Sewer Authority of the City of Scranton*.

SHAWN M. GARVIN
Regional Administrator
U.S. EPA Region III
1650 Arch Street
Philadelphia, PA 19103-2029

~~MARCIA E. MULKEY~~
MARY COE
Regional Counsel
U.S. EPA Region III
1650 Arch Street
Philadelphia, PA 19103-2029

CHRISTOPHER DAY
Assistant Regional Counsel
Office of Regional Counsel
U.S. EPA Region III
1650 Arch Street
Philadelphia, PA 19103-2029

THE UNDERSIGNED PARTIES enter into this Amended Consent Decree in the matter of *United States v. Sewer Authority of the City of Scranton.*

FOR THE COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF ENVIRONMENTAL PROTECTION:

BHARAT PATEL, P.E.
Environmental Program Manager
Clean Water Program
Department of Environmental Protection
Northeast Regional Office
2 Public Square
Wilkes-Barre, PA 18701-1915

Dated

JOSEPH S. CIGAN III
Assistant Counsel
Office of Chief Counsel
Department of Environmental Protection
Northeast Regional Office
2 Public Square
Wilkes-Barre, PA 18701-1915
(570) 826-2519 (voice)
(570) 820-4838 (fax)
jcigan@state.pa.us
PA 74927

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of United States v. Sewer Authority of the City of Scranton.

FOR THE COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF ENVIRONMENTAL PROTECTION:

_____
MICHAEL J. BRUNAMONTI, P.E.
Program Manager
Clean Water Program
Department of Environmental Protection
Northeast Regional Office
2 Public Square
Wilkes-Barre, PA 18701-1915

_____
Dated

_____
JOSEPH S. CIGAN III
Assistant Counsel
Office of Chief Counsel
Department of Environmental Protection
Northeast Regional Office
2 Public Square
Wilkes-Barre, PA 18701-1915
(570) 826-2519 (voice)
(570) 820-4838 (fax)
jcigan@state.pa.us
PA 74927

~~THE UNDERSIGNED PARTIES~~ enter into this ~~Consent Decree in the matter of *United States v. Sewer Authority of the City of Scranton.*~~
FOR THE SEWER AUTHORITY OF THE CITY OF SCRANTON.

_____

| | |
|---|---|
| Date | |

_____

EUGENE P. ~~BARRET~~BARRETT
Executive Director
Scranton Sewer Authority
312-314 North Adams Avenue
Scranton, PA 18503-1501

_____

JEFFREY BELARDI, ESQ.
Belardi Law Offices
410 Spruce Street, 4th Floor
Scranton, PA  18503

THE UNDERSIGNED PARTIES enter into this Amended Consent Decree in the matter of *United States v. Sewer Authority of the City of Scranton.*

FOR PENNSYLVANIA-AMERICAN WATER COMPANY.

| | |
|---|---|
| Date | KATHY L. PAPE<br>President<br>Pennsylvania-American Water Company<br>800 West Hersheypark Drive<br>Hershey, PA 17033 |
| | ANDREW L. SWOPE<br>Vice-President, General Counsel and Secretary<br>Pennsylvania-American Water Company<br>800 West Hersheypark Drive<br>Hershey, PA 17033 |