UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff, and*<br><br>COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL PROTECTION,<br><br>    *Plaintiff-Intervenor*,<br><br>v.<br><br>SEWER AUTHORITY OF THE CITY OF SCRANTON, *and*<br><br>PENNSYLVANIA AMERICAN WATER CO.,<br><br>    *Defendants*. | Civ. No. 3:09-CV-1873<br>(Hon. John E. Jones III) |

## MEMORANDUM IN SUPPORT OF
## UNOPPOSED MOTION TO ENTER AMENDED CONSENT DECREE

On October 27, 2016, the United States lodged with the Court a proposed amended consent decree. (ECF No. 170-1.) The proposed amended decree would replace the consent decree that the Court entered on January 31, 2013 (ECF No. 167) and that the Parties modified in December 2015 (ECF No. 168). The proposed amended consent decree would allow the Scranton Sewer Authority ("SSA") to proceed with a transaction in which Pennsylvania American Water Company

("PAWC") will purchase the wastewater collection and treatment system that is the subject of the consent decree. Under the terms of the proposed amended consent decree, if the transaction proceeds, PAWC will become the "Defendant" under the consent decree and stand in the shoes of the SSA. If the SSA and PAWC do not successfully close the transaction, then the SSA will continue to be the "Defendant" within the meaning of the consent decree. The Department of Justice published notice of the proposed amended consent decree in the Federal Register, but it has not received any comments.

## PROCEDURAL HISTORY

On September 29, 2009, the United States filed a Complaint against the SSA under Section 309 of the CWA, 33 U.S.C. § 1319. The Pennsylvania Department of Environmental Protection ("PADEP") subsequently intervened as a plaintiff, filing its own complaint. The complaint filed by the United States (ECF No. 1), alleged claims under Section 309 (b) and (d) of the Clean Water Act, 33 U.S.C. § 1310(b), (d) (2006). The complaint in intervention filed by PADEP (ECF No. 12-2), alleged claims under Section 601 and 605 of the Pennsylvania Clean Streams Law, 35 P.S. §§ 691.601 and 695.605. The complaints sought civil penalties and injunctive relief.

The parties signed a proposed consent decree and lodged it with the Court on December 13, 2012. (ECF No. 164.) The United States published notice of that consent decree in the Federal Register, but it did not receive any comments. On the

2

United States' motion, the Court entered the consent decree as an order of the Court on January 31, 2013. (ECF No. 164.) The parties subsequently made minor modifications to the consent decree and notified the Court. (ECF No. 168.)

## STATEMENT OF FACTS

The Sewer Authority of the City of Scranton, also known as the Scranton Sewer Authority ("SSA"), is a municipal authority created under the Pennsylvania Municipal Authorities Act, 53 Pa. Cons. Stat. Ann. §§ 5601–23 (West), that operates a sewer system serving a 16-square mile area that includes part of the City of Scranton and portions of the Boroughs of Dunmore, Taylor, Dickson City, and Moosic. The SSA's sewer system includes a municipal wastewater treatment plant and an associated wastewater collection system. The collection system includes approximately 275 miles of sewers, approximately 172 miles of which are combined sewers that carry sewage, industrial wastewater, and storm water. The combined sewers frequently overflow, particularly during rainfall events, and discharge raw combined sewage into the Lackawanna River and its tributaries in events known as combined sewer overflows.

Under the Clean Water Act, the SSA was required to submit to the EPA a long term control plan ("LTCP") for minimizing combined sewer overflows. The complaint, which was filed in 2009, alleged that the SSA failed to submit an LTCP

and also violated several other aspects of state and federal law in connection with its operation and maintenance of the sewer system.

Pursuant to the 2013 consent decree, the SSA paid a civil penalty of $340,000 and was ordered to develop and implement an LTCP and comply with certain specified operation and maintenance requirements. The SSA submitted an LTCP on December 1, 2012, and the EPA approved it with comments on February 19, 2013. Since then, the SSA has been implementing the LTCP. However, as new information became available, the SSA proposed minor modifications to the size, location, and schedule of construction for several of the sewage control structures that it must build pursuant to the LTCP. The United States, PADEP, and the SSA agreed to those minor modifications and notified the Court on December 18, 2015.

Around the time that the Parties were finalizing and submitting the December 2015 consent decree modification, the SSA's board of directors selected a proposal from PAWC for purchasing the SSA's assets and began an effort to further develop that proposal. PAWC is a for-profit utility that operates drinking water and wastewater systems in Pennsylvania. In fact, PAWC already operates the drinking water system that serves the City of Scranton. PAWC has total assets of $3.9 billion and annual revenues in excess of $613 million. PAWC is a subsidiary of American Water Works Company, Inc. American Water Works currently owns or operates

approximately 200 wastewater operations through its subsidiaries in a number of states.

When the SSA's board of directors selected PAWC's proposal for further development, this began a lengthy process of negotiations and due diligence investigations among the SSA, PAWC, the United States, and PADEP. The existing consent decree states that the SSA cannot be released from the obligations of the consent decree unless:

> (i) the transferee has the financial and technical ability to assume these obligations and liabilities; (ii) the United States and the PADEP have agreed to release the SSA from the obligations and liabilities; (iii) the United States, the PADEP, and the transferee have jointly moved to substitute the transferee as Defendant to this Consent Decree; and (iv) the Court has approved the substitution

Consent Decree ¶ 5. After lengthy discussions and exchanges of information, the United States and the PADEP concluded that PAWC does have the financial and technical ability to assume the obligations and liabilities of the consent decree. The Parties also agreed to other significant modifications of the consent decree to accommodate the potential transfer of ownership and new information about conditions in Scranton:

- ¶ 9 of the proposed amended consent decree describes a new Appendix B, which is the nine minimum controls plan that PAWC will carry out. Although PAWC will adopt the SSA long term control plan, the nine minimum controls plan needed updates to reflect current conditions and PAWC's management structure. Paragraph nine also includes a new "operating and monitoring protocol for maximizing flow to the

WWTP." This protocol describes how PAWC will maximize the flow through the plant (and thereby reduce CSO overflows) over the next four years while it corrects problems with the design of the treatment plant upgrades that were constructed in 2014.

- ¶ 11 states the LTCP is amended by the schedule set forth in operating protocol described above.

- ¶ 15(b) eliminates an outdated requirement to purchase nutrient credits if the SSA cannot meet its nutrient limits by 2014, and replaces the outdated requirement with a new one: to operate the nutrient reduction system at all times.

- ¶ 36 clarifies that the SSA will be liable for stipulated penalties for violations occurring on days up to, but not including, the day on which the closing of the transaction occurs. PAWC is liable for stipulated penalties for violations on or after the closing date.

- ¶ 79 requires the SSA to transfer its records to PAWC upon the closing of the transaction, and then makes PAWC responsible for preserving them.

For the Court's convenience, exhibit A to the United States' motion to enter the proposed amended consent decree is a redline markup that illustrates in detail the proposed changes to the existing consent decree.

## QUESTION PRESENTED

Are the modified portions of the proposed amended consent decree fair, reasonable, and consistent with the purposes of the Clean Water Act?

## ARGUMENT

The existing consent decree expressly provides that it may be modified, but "only by a subsequent written agreement signed by all of the Parties or their successors in interest," and "[w]here the modification constitutes a material change

to this Consent Decree, it shall be effective only upon approval by the Court."
Consent Decree ¶ 88. The consent decree also expressly states the Court may
approve the substitution of a different person for the SSA. *Id.* ¶ 5. The United
States' motion to enter the proposed amended consent decree should be evaluated
under the same standard that applies to the review of a new consent decree, except
that the Court should limit its review to the proposed modification because the
Court already approved the other provisions by entering the original consent decree.

In the Third Circuit, a consent decree is reviewed to determine whether it is
fair, reasonable, and consistent with the purposes that the underlying statute is
intended to serve. *See United States v. Atlas Minerals & Chems.*, 851 F. Supp. 639,
648 (E.D. Pa. 1994); *see also Plaskett v. Esso Standard Oil S.A.* (*In re Tutu Water
Wells CERCLA Litig.*), 326 F.3d 201, 210 (3d Cir. 2003); *United States v.
Southeastern Pa. Transp. Auth. ("SEPTA")*, 235 F.3d 817, 823 (3d Cir. 2000). The
scope of a district court's review of a proposed consent decree is limited. While a
court "should not blindly accept the terms of a proposed settlement," *United States
v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999), and should "eschew any
rubber stamp approval in favor of an independent evaluation," *Detroit v. Grinnell
Corp.*, 495 F.2d 448, 462 (2d Cir. 1974), the Court's inquiry need not be
all-encompassing:

> [A] trial court approving a settlement need not inquire into the precise legal rights of the parties nor reach and resolve the merits of the claims or controversy. In fact, it is precisely the desire to avoid a protracted examination of the parties' legal rights that underlies entry of consent decrees.

*Bragg v. Robertson*, 83 F. Supp. 2d 713, 717 (S.D.W. Va. 2000) (citations omitted); *accord United States v. Comunidades Unidas Contra la Contaminacion*, 204 F.3d 275, 281 (1st Cir. 2000); *North Carolina,* 180 F.3d at 581; *Grinnell*, 495 F.2d at 462.

Not only should a district court's review of a consent decree be narrow in scope, it should entail a certain degree of deference. As the Supreme Court has stated:

> [S]ound policy would strongly lead us to decline . . . to assess the wisdom of the Government's judgment in negotiating and accepting the . . . consent decree, at least in the absence of any claim of bad faith or malfeasance on the part of the Government in so acting.

*Sam Fox Publ'g Co. v. United States,* 366 U.S. 683, 689 (1961).

There are several reasons for conducting a deferential review of a consent decree lodged by the United States. One reason is "the general principle that settlements are encouraged." *North Carolina*, 180 F.3d at 581. As the Sixth Circuit explained, settlement agreements, which would include consent decrees, "[spare] the burdens of trial . . . to the parties, to other litigants waiting their turn before over-burdened courts, and to the citizens whose taxes support the latter." *Aro Corp.*

*v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976). Another reason is that courts owe deference to an administrative agency acting in its area of expertise:

> [W]here a government agency charged with protecting the public interest has pulled the laboring oar in constructing the proposed settlement, a reviewing court may appropriately accord substantial weight to the agency's expertise and public interest responsibility.

*Bragg*, 83 F. Supp. 2d at 717.

Deference should also be granted to this motion as an official act of the Attorney General, who has "exclusive authority and plenary power to control the conduct of litigation in which the United States is involved." *United States v. Hercules, Inc.*, 961 F.2d 796, 798 (8th Cir. 1992) (citing 28 U.S.C. § 516; *FTC v. Guignon*, 390 F.2d 323, 324 (8th Cir. 1968)). This authority places considerable discretion in the hands of the Attorney General to decide whether, and on what terms, to enter into a settlement. *Hercules*, 961 F.2d at 798 (citing *Swift & Co. v. United States*, 276 U.S. 311, 331-32 (1928)); *United States v. Associated Milk Producers, Inc.*, 534 F.2d 113, 117 (8th Cir. 1976).

In sum, the Court's role in reviewing the proposed amended consent decree is limited. If the modified portions of the consent decree are fair, adequate, and reasonable, and not illegal, the product of collusion, or against the public interest, it ought to be approved. *Id.* Moreover, the Court should defer to the EPA's expertise in protecting human health and the environment and to the Attorney General's

expertise in controlling government litigation, assessing litigation risk and determining settlement terms that are in the public interest.

### A. THE PROPOSED AMENDED CONSENT DECREE IS REASONABLE

"Reasonableness" is a fact-sensitive inquiry that depends on the terms of the settlement and the nature of the relief sought. *Atlas Minerals*, 851 F. Supp. at 652. The proposed amended consent decree is reasonable because it ensures the same injunctive relief will be performed, on the same schedule, to ensure that sewage overflows are reduced and that the sewer system comes into compliance with the Clean Water Act. Moreover, given PAWC's assets, the variety of its current operations, and its ties to American Water Company, EPA and PADEP were reasonable in concluding that PAWC has the financial and technical ability to assume the obligations of the consent decree.

### B. THE PROPOSED CONSENT DECREE IS PROCEDURALLY AND SUBSTANTIVELY FAIR.

The fairness of a consent decree must be evaluated in both procedural and substantive aspects. *Plaskett*, 326 F.3d at 207. Procedural fairness is measured by the level of candor, openness, and bargaining balance involved in the negotiation process. *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 86 (1st Cir. 1990). Substantive fairness requires that the terms of the consent decree are "based on a rational determination of comparative fault . . . whether or not [a district court]

would have employed the same method of apportionment." *Plaskett*, 326 F.3d at 207 (quoting *United States v. SEPTA*, 235 F.3d 817, 823 (3d Cir. 2000)).

The proposed amendments to the consent decree resulted from procedurally fair negotiations. The negotiations were conducted at arms length over the course of many months. Each party was represented by counsel with significant experience and expertise in environmental law, including the Clean Water Act.

The proposed amended consent decree is substantively fair as well. The injunctive relief, once complete, will eliminate the unlawful conduct alleged in the complaint and achieve the same benefits for human health and the environment.

### C. THE PROPOSED CONSENT DECREE IS CONSISTENT WITH THE PURPOSES OF THE CLEAN WATER ACT.

The objectives of the Clean Water Act are, in pertinent part, "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The proposed amended consent decree does not retreat from the injunctive relief in the original consent decree, which this Court has already found consistent with the purposes of the Clean Water Act. In addition, because the SSA has already paid an appropriate civil penalty, and because the SSA and PAWC, respectively, will be liable for any stipulated penalties incurred while they own the sewage treatment plant and collection system, the consent decree will continue to appropriately deter violations of the Clean Water Act.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the proposed consent decree be entered as an order of the Court.

                                                Respectfully Submitted,

                                                JOHN C. CRUDEN
                                                Assistant Attorney General
                                                Environment and Natural Resources
                                                Division
                                                U.S. Department of Justice

| Dec. 5, 2016 | /s/ Daniel S. Smith |
|---|---|
| Dated | DANIEL S. SMITH |
| | Senior Counsel |
| | Environmental Enforcement Section |
| | Environment and Natural Resources |
| | Division |
| | U.S. Department of Justice |
| | P.O. Box 7611 |
| | Ben Franklin Station |
| | Washington, D.C. 20044-7611 |
| | 202-305-0371 (voice) |
| | 202-616-6583 (fax) |
| | dan.smith2@usdoj.gov |

Of Counsel:

BRUCE D. BRANDLER
U.S. Attorney
Middle District of Pennsylvania

MARK E. MORRISON
Assistant United States Attorney
Chief, Civil Division
U.S. Attorney's Office
228 Walnut Street, Suite 220
P.O. Box 11754
Harrisburg, PA 17108-1754
Phone: (717) 221-4482 x247
Fax: (717) 221-2246

# CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2016, I caused copies of the foregoing memorandum to be served by First Class Mail, postage prepaid, sent to the following addresses:

R. Timothy Weston, Esq.
K&L Gates LLP
Market Square Plaza, 18th Floor
17 North Second Street
Harrisburg, PA 17101
*Counsel for Pennsylvania American Water Co.*

In addition, I have served the counsel listed below by ECF:

For the Pennsylvania Department of Environmental Protection:
    Joseph S. Cigan, Esq.    jcigan@state.pa.us

For the Sewer Authority of the City of Scranton:
    Frank P. Calamita, Esq.    paul@aqualaw.com
    Jeffrey Belardi, Esq.    jeff@belardilegal.com

    /s/ Daniel S. Smith
    DANIEL S. SMITH
    Senior Counsel
    U.S. Department of Justice